**MARR JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

CHRISTOPHER J. COLE                5781-0
Pauahi Tower
1003 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700
ccole@marrjones.com

PETER A. STEINMEYER (Pro Hac Vice)
(MO Bar 38305; IL Bar No. 6211874)
A. MILLIE WARNER (Pro Hac Vice)
RIDHI D. MADIA (Pro Hac Vice)
ERIK W. WEIBUST (Pro Hac Vice)
EPSTEIN BECKER & GREEN, P.C.
227 West Monroe Street, Suite 3250
Chicago, IL  60606
Tel. No. (312) 499-1400
psteinmeyer@ebglaw.com
eweibust@ebglaw.com
mwarner@ebglaw.com
rmadia@ebglaw.com

Attorneys for Plaintiff
HH ASSOCIATES, U.S., INC.,
as successor to INNERWORKINGS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HH ASSOCIATES, U.S., INC., as successor to INNERWORKINGS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RAYMOND EVANS, <br><br> Defendant. | CIVIL NO. CV22-00062 JAO-KJM <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DEADLINES [DOC 29]; DECLARATION OF A. MILLIE WARNER; EXHIBITS A-U <br><br> <u>Hearing</u>: <br> Date: October 5, 2023 <br> Time: 10:00 a.m. <br> Judge: Hon. Kenneth J. Mansfield <br><br> <u>Trial</u>: <br> Date: January 16, 2024 <br> Time: 9:00 a.m. <br> Judge: Hon. Jill A. Otake |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DEADLINES [DOC 29]</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND.................................................................................4

ARGUMENT ....................................................................................................10

A.  Evans Did Not Meet and Confer About a Three-Month Continuance or Comply with Local Rule 40.3 .................................................................................10

B.  Evans Cannot Satisfy Rule 16's "Good Cause" Standard to Modify the Scheduling Order.................................................................................................13

  1 .  This Court already ruled that this case should not be stayed pending trial in the Florida Case, and Evans offers no valid excuse for his 10-month delay in seeking an extension .................................................................................15

  2.  Attorney Hildebrand did not "reasonably rely" on anything ........................18

  3.  The only Party that could conceivably be prejudiced here is IW ..................20

  4.  Evans should be required to respond to IW's summary judgment motion within one week of the Court's Order ................................................................21

  5.  Evans should be precluded from filing a summary judgment motion ..........21

C.  Evans's Counsel Should Be Ordered To Show Cause As To Why The Court Should Not Issue Sanctions.................................................................................23

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coles v. Eagle*,
  2013 1856002 (D. Haw. Apr. 30, 2013).................................................2, 3, 14, 18

*Fitchett v. Wilson*,
  2013 WL 5468389 (D.S.C. Sept. 30, 2013), *aff'd*, 561 F. App'x
  256 (4th Cir. 2014).................................................................................22

*Fox v. Am. Airlines, Inc.*,
  389 F.3d 1291 (D.C. Cir. 2004)..............................................................21

*Gramercy Grp., Inc. v. D.A. Builders, LLC*,
  2018 WL 5270314 (D. Haw. Oct. 23, 2018) (Otake, J.) ....................13, 14

*Jimenez v. Montgomery*,
  2016 WL 4060099 (C.D. Cal. Mar. 24, 2016)..........................................22

*Keating v. Nordstrom, Inc.*,
  2019 WL 7160382 (D. Alaska Dec. 4, 2019)............................................22

*Raya v. Calbiotech*,
  2019 WL 11504688 (S.D. Cal. Nov. 26, 2019).........................................21

*Yao v. Carillon Towner/Chicago LP*,
  C.A. No. 1:18-cv-7865, ECF No. 534 (N.D. Ill.) (May 18, 2023)......................9

*Young v. Kraus*,
  2017 WL 390268 (D. Haw. Jan. 27, 2017)................................................22

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) .................................................................13

**Other Authorities**

Fed. R. Civ. P. 11 ......................................................................................9

Fed. R. Civ. P. 16 ..................................................................................2, 13

Fed. R. Civ. P. 16(b)(4).............................................................................13

Fed. R. Civ. P. 29 ..................................................................................2

Fed. R. Evd. 801(d)(2)(B)....................................................................12

Local Rule 7.8 ..........................................................................7, 11, 13

Local Rule 40.3 ...................................................................................10

Model Rule of Professional Conduct 3.3 ..........................................9, 10

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DEADLINES [DOC 29]

## PRELIMINARY STATEMENT

In his Motion to Continue Trial Date and Pretrial Deadlines (the "Motion"), Defendant Raymond Evans seeks a three-month extension of the dispositive motion and all other deadlines in this case, including the trial date, feigning "surprise" that IW[1] filed a summary judgment motion in accordance with the Rule 16 Scheduling Order (ECF No. 22) that the Court issued 13 months ago. But the only party that has genuine cause to be surprised here is IW. Despite knowing (and never seeking to modify) the dispositive motion deadline for the past 13 months, and notwithstanding IW providing 10 days' advance notice that it would be moving for summary judgment on the deadline, and participating in a meet and confer about it seven days in advance, Evans waited until the evening of the deadline, ***after*** IW filed its summary judgment motion, to sandbag IW with a motion for a three-month extension, ***without ever even attempting to meet and confer about the request, and then <u>falsely representing to the Court</u> that he did***.

Evans attempts to justify his conduct by claiming that: (1) his counsel purportedly "reasonably relied" on an agreement among counsel to informally stay all deadlines in this case until after the October 2023 trial in the related litigation in the United States

---

[1] Plaintiff HH Associates, U.S., Inc., as successor to InnerWorkings, Inc., is referred to herein as "IW."

District Court for the Middle District of Florida (the "Florida Case"), and (2) staying this case until after the Florida Case will conserve the parties' and the Court's resources because the Florida Case will purportedly "fully resolve" or at least "substantially narrow" this litigation. But these justifications are false. There was no such agreement among counsel to informally stay the deadlines in this case (nor could there have been under Fed. R. Civ. P. 29), which is evidenced, *inter alia*, by **both parties** having proceeded for months in accordance with the scheduling order in this case (including in the past few weeks) without seeking to modify it.  Moreover, the Florida Case will not "resolve" or "substantially narrow" this case, given the factual and legal differences between them. And Evans's purported concerns about "efficiencies" and "judicial economy" ring hollow in light of the fact that his decision to refuse to consent to personal jurisdiction in the Florida Case is what necessitated two litigations in the first place.

Finally, even Evans's (false) justifications do not come close to establishing the "good cause" required under Rule 16 of the Federal Rules of Civil Procedure to amend the scheduling order. Evans cannot establish that it was "not reasonably possible" for him to have met the summary judgment deadline despite working diligently to do so— particularly as he had **seven months** after the close of discovery in the Florida Case and IW managed to prepare and file its summary judgment motion on time. Nor can Evans establish that he was "diligent in seeking amendment [to the scheduling order] once the need to amend became apparent." *Coles v. Eagle*, 2013 1856002, at *2 (D. Haw. Apr.30,

2013). The only reason he cites for amending the scheduling order is the October 2023 trial date in the Florida Case. But Evans has known about that trial date for ***10 months***, and yet did nothing to seek to amend the dispositive motion (or any other) deadline in this case until the evening of the deadline itself, ***after IW had already filed its own motion for summary judgment***. This is not diligence, nor is it good cause. This is gamesmanship and litigation by ambush, and it should not be rewarded, particularly at the expense of IW, which has complied with all Rules and scheduling orders in this case.

In sum, Evans and his counsel made poor strategic decisions at the outset of this case—including refusing to consent to personal jurisdiction in the Florida Case, despite the fact that doing so would have fostered the "efficiencies" and "judicial economy" that he now bemoans the purported lack of—and their chickens are coming home to roost. The Court should not countenance such behavior, and in addition to denying Evans's Motion, it should preclude him from filing a (late) summary judgment motion, order him to file an opposition to IW's summary judgment motion within one week of the Court's Order, and order his counsel to show cause as to why the Court should not award IW the fees it incurred preparing this opposition given their misrepresentations to the Court and transparent gamesmanship.[2]

---

[2] IW requested that Evans stipulate to an expedited briefing and hearing schedule on the instant motion. Declaration of A. Millie Warner (the "Warner Decl.") at ¶ 31. The Parties met and conferred on August 30, 2023, and Evans's counsel, Attorney Daniel Hildebrand, quietly chuckled at the request and admitted that he had already obtained most of what he wanted just by virtue of the Court setting a hearing

## FACTUAL BACKGROUND

On April 15, 2021, IW commenced the Florida Case against Smart Source, LLC ("SS") and Sara Horn, a former IW executive who had joined SS, alleging that SS and Horn destroyed IW's Hawaii business by poaching all of its Hawaii sales representatives and virtually all of its Hawaii customers. Warner Decl. at ¶ 2, Ex. A. In that suit, IW asserted claims against Horn for breach of her contractual non-competition, employee and customer non-solicitation, and confidentiality covenants; against Horn and SS for misappropriation of trade secrets, tortious interference with existing and prospective business relationships, and aiding and abetting breaches of fiduciary duty by Evans (a former IW sales representative and the local manager of IW's Hawaii business); and against SS for tortious interference with Horn's contract and unfair competition. *Id*. ¶ 3.

Discovery in the Florida Case quickly revealed that Evans played a far more active and critical role in conspiring with SS and Horn to steal IW's Hawaii business for SS than IW initially suspected. *Id*. ¶ 4. This included Evans ***admitting*** that ***while he was employed at IW***, he (i) presented SS's offer of employment to IW's other Hawaii sales representatives, facilitated SS's recruitment of them, and negotiated

_____

in October. *Id.* He even went so far as to flippantly suggest that IW should simply consent to Evans's request for a three-month extension of all deadlines because he had effectively already got half of it anyway. *Id.* Indeed, Attorney Hildebrand refused to move up the hearing despite the fact that he and the undersigned are scheduled to be on trial in Florida in October. *Id.* This is pure gamesmanship.

4

SS's employment offers to the other Hawaii reps on their behalf (ECF No. 28 at ¶¶ 13, 15-16, 19-20, 22, 35); (ii) solicited **all** of his IW customers to move their business to SS (Warner Decl., Ex. T at 242:24-243:1, 245:17-25; *see also* ECF No. 28 at ¶¶ 25, 27, 28); and (iii) furnished SS with confidential and trade secret IW information (ECF No. 28 at ¶¶ 17, 18, 21, 27, 29, 30, 31, 34, 36, 37) despite knowing that this "wasn't the right thing to do" and worrying IW would "simply fire [him] if they found out," and pleading for SS's and Horn's "protect[ion]." ECF No. 28-6.

Accordingly, in January 2022, the undersigned informed Evans's counsel, Attorney Hildebrand, who also represents Horn in the Florida Case, that IW intended to assert claims against Evans, and asked if Evans would "waive any objection to personal jurisdiction and venue in the [Florida] case" so that the parties would only have a single suit to litigate, but if not, IW would file a separate suit against Evans in Hawaii. Warner Decl., ¶ 5 and Ex. B. Evans refused to consent to jurisdiction in the Florida Case. *Id.* As a result, on February 11, 2022, IW commenced suit against Evans in this Court, asserting claims for breach of fiduciary duty, breach of his confidentiality agreement with IW, misappropriation of trade secrets, tortious interference with existing and prospective business relationships, and civil conspiracy. ECF No. 1.

Initially, the parties discussed staying this case until after the Florida Case, and made this request of the Court. ECF No. 15. At that time, trial in the Florida Case was scheduled for June 2023. Warner Decl., Exs. C, D. However, the Court denied the

requested stay, and established a case management schedule in the Rule 16 Scheduling Order on July 6, 2022. ECF No. 22. This included a close of discovery deadline of August 21, 2023; expert disclosures on June 6, 2023 (Plaintiff) and August 7, 2023 (Defendant), with rebuttal disclosures within 30 days after the disclosure by the other party; a dispositive motion deadline of August 21, 2023; and a January 16, 2024 trial date. *Id.*

On October 12, 2022, at the request of the Defendants in the Florida Case, including Attorney Hildebrand's client, Horn, the trial date in the Florida Case was moved from June 1, 2023 to October 2023. Warner Decl., ¶¶ 8-10, Ex. G. Neither at this point nor at any time thereafter did the parties in this case discuss seeking to move the dispositive motion (or any other deadline) in the Rule 16 Scheduling Order in light of this change to the trial date in the Florida Case, or asking the Court to reconsider its decision not to stay this case pending resolution of the Florida Case. *Id.* ¶ 11. Rather, the parties continued to proceed in accordance with the deadlines established in the Rule 16 Scheduling Order. Accordingly, IW served its expert disclosure and report on Evans on June 6, 2023 (the deadline established in Section 3.a of the Rule 16 Scheduling Order) (Warner Decl., Ex. H]), and, on June 30, 2023, Evans's counsel requested a 10-day extension of the July 6, 2023 deadline established in Section 3.b of the Rule 16 Scheduling Order for him to serve his expert disclosure and report. *Id.*, Ex. I. IW consented, and Evans served his expert

disclosures and reports on the agreed-upon extended deadline. Warner Decl., Ex. J.

Cognizant of the August 21, 2023 dispositive motion deadline in the Rule 16 Scheduling Order and of the requirement under Local Rule 7.8 to meet and confer at least one week in advance of filing a motion, the undersigned notified Attorney Hildebrand via email on August 11 that IW intended to move for summary judgment on the dispositive motion deadline, and requested a meet and confer. Warner Decl., Ex. K. The meet and confer took place on August 14. Warner Decl., ¶ 16. During the meet and confer, the undersigned discussed IW's forthcoming summary judgment motion and inquired whether Evans would stipulate to liability in light of his admissions at his deposition of the core facts establishing IW's claims against him. *Id.* Attorney Hildebrand agreed that Evans had effectively "confessed" at his deposition, and said that he would consider a stipulation as to liability.[3] *Id.* Recognizing that the parties likely would not reach resolution of that possibility before the dispositive motion deadline, the undersigned stated that IW would be moving for summary judgment on August 21. *Id.*

Attorney Hildebrand said that he was considering moving for summary judgment on behalf of Evans as to damages, and requested a two-week extension of

---

[3] Attorney Hildebrand also opined at this meet and confer that "[t]he Hawaii case is a waste of time, particularly after [Evans's] deposition. You got what you needed. He fell on his sword." *Id.* ¶ 16. And he admitted that he "thought it was in Sara [Horn]'s best interest to not have Ray [Evans] be a co-defendant." *Id*.

the August 21 deadline for him to do so. *Id.* at ¶ 17. He justified this request on the grounds that he could not simply "repurpose what [the defendants] did in [the Florida Case]," where they had already filed a 50-page summary judgment motion and a 10-page reply (in addition to a 50-page opposition to IW's summary judgment motion as to liability), because "the narrative as to Ray [Evans] is a little bit different," his "conduct wasn't really featured in [the defendants'] summary judgment presentation" in the Florida Case, and it would consequently "take[] a little time" to craft a summary judgment motion on behalf of Evans. *Id.* The undersigned said that as discovery closed in the Florida Case seven months ago,[4] the parties had had more than sufficient time to prepare summary judgment motions in this case in advance of the August 21 deadline, and IW was therefore unlikely to consent to any extensions. *Id.* Attorney Hildebrand said that in that case, he may file a motion requesting a two-week extension of the dispositive motion deadline. *Id.*[5] ***Never once did he mention, much less request, a three-month extension of all deadlines in the case.*** *Id.*

The next day, August 15, counsel confirmed in an email to Attorney Hildebrand that IW did not consent to his requested ***two-week extension*** of the summary judgment

---

[4] The parties had agreed that the discovery taken in the Florida case would be used as the discovery in this case, and neither party ever sought to take additional discovery in this case. Warner Decl., ¶ 17.

[5] After the meet and confer (at which Smart Source's counsel was present), Attorney Hildebrand reached out to the undersigned to have a private settlement discussion without Smart Source's counsel present, the details of which will not be revealed here. Warner Decl., ¶ 18.

deadline. Warner Decl., Ex. L. This email made no mention of any other requested extension, because the only requested extension was for *two weeks* to file summary judgment. *Id.* Attorney Hildebrand never responded to this email. Warner Decl., ¶ 19.

At 5:06 p.m. on August 21, 2023, with Attorney Hildebrand never having filed a motion for an extension of the summary judgment deadline, and with no extension of the dispositive motion (or any other) deadline thus having been granted by the Court, IW filed its summary judgment motion as to liability against Evans. Warner Decl., ¶ 20; ECF No. 27. Approximately thirty minutes *after* IW completed its filing, at 6:01 p.m. on August 21, 2023, Evans's Hawaii counsel filed the Motion under Attorney Hildebrand's signature. Warner Decl., ¶ 21; ECF No. 29.

While Attorney Hildebrand attests in his sworn declaration filed in support of the Motion that he met and conferred with the undersigned on August 14 about staying all deadlines in this case "until after trial of the Florida Action," and "proposed dates for the amended schedule" (ECF No. 29-1 at ¶ 9), *that is *_false_*. All Attorney Hildebrand proposed at the August 14 meet and confer was a two-week extension of the dispositive motion deadline—that's it: nothing more, nothing less. Warner Decl., ¶ 17.[6]

---

[6] A federal judge in Chicago recently found that Attorney Hildebrand violated Fed. R. Civ. P. 11 and ABA Model Rule of Professional Conduct 3.3 for failing to correct factual misstatements to the Court. *See Yao v. Carillon Towner/Chicago LP*, C.A. No. 1:18-cv-7865, ECF No. 534 (N.D. Ill.) (May 18, 2023) ("The Court has reviewed the Magistrate Judge's Memorandum Report and Recommendation 516 and is in full agreement with the Magistrate Judge's conclusion that ***Defendants' attorney [Attorney Hildebrand] violated Fed. R. Civ. P. 11 and the ABA Model***

## ARGUMENT

### A. Evans Did Not Meet and Confer About a Three-Month Continuance or Comply with Local Rule 40.3

As a threshold issue, the Court should deny the Motion for failure to comply with the Local Rules. Local Rule 40.3 requires that "[a]ny motion to continue trial shall indicate that the client party has consented to the continuance." Nowhere does the Motion

---

*Rule of Professional Conduct 3.3* by failing to perform the requisite reasonable inquiries into the loan at issue, *choosing to 'avoid confirming' the facts underlying his representations to the Court regarding the loan, and doing nothing to correct inaccurate information he relayed to the Court.*") (emphasis added).

Additionally, Attorney Hildebrand and/or his co-counsel have made repeated false statements and/or failed to correct false sworn statements of *others* in both the Florida Case *and* in a predecessor case filed in the U.S. District Court for the Northern District of Illinois (the "Illinois Case"). Specifically, in an effort to avoid personal jurisdiction in the first-filed Illinois Case, which IW filed against Evans, other former IW employees, and their current employer, SS, arising out of the same facts and circumstances as here, SS submitted a false declaration from its CFO swearing that SS had no contacts with Illinois, despite the fact that its *then-President*, Jack Huber, lived and worked in Park Ridge, Illinois at all pertinent times – including the date when SS's CFO signed his declaration. *See* Warner Decl., Exs. M, N at 29:16-22, 30:2-4, 30:9-11, 31:6-10, 31:14-15, 32:4-5, 32:17-21. Unfortunately, IW did not learn the truth until it had already voluntarily dismissed the case in reliance on that declaration and refiled in Florida.

Then, in the Florida Case, SS and Attorney Hildebrand (on behalf of his client, Horn) submitted false declarations from former IW customers that moved their business to SS in an effort to show that they were not solicited by Evans. *See* Warner Decl., Exs. P, Q. But Evans's own contemporaneous emails to one of those customers expressly soliciting him for SS (*id.* at Ex. S) and Evans's *admission* at his deposition that he solicited "all" of his IW customers while he was still employed directly contradict the sworn declarations Attorney Hildebrand and his colleagues filed with the court. *Id.*, at Ex. T at 242:24-243:1, 245:17-24.

Attorney Hildebrand has now, unfortunately, brought his co-counsel here into the mix.

indicate Evans's consent. Moreover, as set forth above, Evans failed to meet and confer with IW before filing it. Local Rule 7.8 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential partial or complete resolution." And this Court's General Civil Case Procedures provide that "[f]ailure to strictly comply with . . . Local Rule 7.8 **will result** in the striking and/or the denial of the motion." (Emphasis added). Evans's counsel failed to strictly comply with this requirement, **and <u>is not telling the truth</u> when he says in his sworn declaration he did**. The Motion should be summarily denied on this basis alone.

When the undersigned requested a meet and confer on August 11, the email requesting the meet and confer made clear that the purpose was to "discuss the substance of the contemplated motion [for summary judgment] and any partial or complete resolution," not amending the case management order:



Warner Decl., Ex. K.

Second, at no point in time did Attorney Hildebrand "propose[] dates for the amended schedule." ECF No. 29-1 at ¶ 9. Rather, Attorney Hildebrand requested a **_two-week extension_** to file Evans's motion for summary judgment. Warner Decl., ¶ 17. No other deadlines were even discussed, much less was an amended schedule proposed. *Id.* The next day, August 15, the undersigned confirmed in an email to Attorney Hildebrand that IW did not consent to his requested two-week extension of the summary judgment deadline. Warner Decl., Ex. L. This email made no mention of any other requested extension, because the only requested extension was for two weeks to file summary judgment:



*Id.*

Attorney Hildebrand never responded to this email. Warner Decl., ¶ 19. That silence is a *de facto* admission that he made no other request. *See, e.g., Advisory Committee Note to FRE 801(d)(2)(B)* ("When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.  The decision in each case calls for an evaluation in terms of probable human behavior.")

Evans's failure to comply with Local Rule 7.8—in addition to Attorney Hildebrand's misrepresentations in his declaration about having done so—require the denial of Evans's Motion.

### B.   Evans Cannot Satisfy Rule 16's "Good Cause" Standard to Modify the Scheduling Order

Under Rule 16 of the Federal Rules of Civil Procedure, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause inquiry focuses on the diligence of the party seeking the modification. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Gramercy Grp., Inc. v. D.A. Builders, LLC*, 2018 WL 5270314, at *2 (D. Haw. Oct. 23, 2018) (Otake, J.). Specifically, the pretrial schedule may be modified only "'if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic*, 302 F.3d at 1080 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the party seeking the modification "was not diligent, the inquiry should end" and the motion to modify should not be granted. *Zivkovic*, 302 F.3d at 1087 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Gramercy Grp.*, 2018 WL 5270314, at *2 ("If the party seeking the modification was not diligent, the motion should be denied.").

To establish diligence, the inquiry focuses on the following factors:

Whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused

the need for seeking amendment once the need to amend became apparent; and whether the movant was diligent in seeking amendment once the need to amend became apparent.

*Coles*, 2013 1856002, at \*2. While "[p]rejudice to the non-moving party might supply additional reasons to deny the motion, … the inquiry focuses on the moving party's basis for seeking modification." *Gramercy Grp.*, 2018 WL 5270314, at \*2 (quoting *Johnson*, 975 F.2d at 609).

Here, Evans offers two justifications for amending Rule 16 Scheduling Order:

(1)  to "avoid the unnecessary expenditure of the parties' resources and further serve[] the interests of judicial economy" by allowing "trial to be completed in the lead related case in Florida, which is . . . expected to either fully resolve the matters at issue" here or "at a minimum substantially narrow" them; and

(2)  to "avoid undue prejudice to Defendant where the undersigned defense counsel reasonably relied on representations by Plaintiff's counsel in early case conference that the parties would not pursue litigation of the Hawai'i case pending resolution of the Florida case"

(Mot. at 2). Both of these purported justifications, however, are patently untrue. Far from proceeding with "diligence" in attempting to meet the deadlines set by the Court, Evans has proceeded with calculated delay, both by doing nothing to prepare his summary judgment motion in the past seven months since discovery in the Florida case closed and by strategically waiting until ***after*** IW filed its summary judgment motion (which Evans had known for at least 10 days would be filed on that date) to file his Motion for an extension. That is the *sine qua non* of bad faith, not good cause, and granting his eleventh-hour request for a continuance would only reward

14

Evans's gamesmanship and prejudice IW for its diligence and compliance with the Rules and Rule 16 Scheduling Order.

### 1. This Court already ruled that this case should not be stayed pending trial in the Florida Case, and Evans offers no valid excuse for his 10-month delay in seeking an extension

Evans maintains that a three-month continuance is necessary to allow "trial to be completed" in the Florida Case, which will purportedly "either fully resolve the matters at issue" here or "at a minimum substantially narrow them," and thereby "avoid the unnecessary expenditure of the parties' resources and further serve[] the interests of judicial economy." (Mot. at 2.) This purported justification for a continuance fails for at least three reasons.

*First*, Evans is effectively seeking reconsideration of this Court's decision 13 months ago not to stay this case pending resolution of the Florida Case. But the Court was aware of the Florida Case and its relationship to this case when it denied the parties' request for a stay and set the deadlines contained in the Rule 16 Scheduling Order on July 6, 2022. *See* ECF No. 15. None of that has changed, and thus there is no basis on which for Evans to seek reconsideration.

*Second*, contrary to Evans's contention, the Florida Case will not "fully resolve" or even "substantially narrow" this case. Here, IW alleges, *inter alia*, that Evans breached his fiduciary duty of loyalty and contractual obligations to IW by soliciting the employees he managed to leave IW and join SS, misappropriating IW's confidential information

and trade secrets, and soliciting his clients to move their business to SS—*all of which Evans has admitted*. *See* ECF No. 28 at ¶¶ 13-22, 25-31, 33-37; *see also* Warner Decl., Ex. T. In the Florida Case, IW alleges that SS and Horn aided and abetted Evans's breach of fiduciary duty and misappropriated IW's trade secrets by accepting them from Evans, but most of IW's 11 causes of action relate to independent conduct by Horn and SS (*e.g.*, Horn's breaches of her restrictive covenants with IW, SS's tortious interference with IW's restrictive covenant agreements with Horn, Horn's independent misappropriation of other trade secrets from IW). Warner Decl., ¶ 3. Thus, whereas a resolution of this case could arguably aid in portions of some of IW's claims in the Florida Case (although it is unnecessary), the opposite is simply not true.[7]

Perhaps the best evidence of this is the justification Attorney Hildebrand himself offered at the parties' August 14 meet and confer for the two-week extension of the dispositive motion deadline that he was requesting. If, as Evans contends in the Motion, "the Florida case involve[d] essentially the same facts and theories of liability as this action," and "is substantially likely to resolve most if not all of the matters at issue here"

---

[7] The only possible effect that the Florida Case could have on this one is in terms of the damages IW is entitled to recover should it prevail. There is no dispute that IW cannot recover the same damages twice, but IW could lose in the Florida Case, or recover only a portion of the damages to which it is entitled, and in any event, it is seeking additional monetary remedies here, including disgorgement of Evans's compensation from IW during the period of his disloyalty, as well as punitive damages and its attorneys' fees. Notably, Smart Source has agreed to indemnify Evans, so it will be responsible for any such award, but IW still must prove its case. Warner Decl., Ex. U.

(Mot. at p. 6.), Evans could simply have repurposed the defendants' motion for summary judgment in the Florida Case (in which, again, Attorney Hildebrand represents a defendant). But, of course, that is false. Attorney Hildebrand knows this well, and thus he admitted at the meet and confer that he could not "repurpose" the defendants' summary judgment brief in the Florida Case because "the narrative as to Ray [Evans] is a little bit different," and it will therefore "take[] a little time" prepare a summary judgment motion for Evans in this case. Warner Decl., ¶ 17. Indeed, if Evans truly believed that the Florida case would resolve this case and was as concerned about efficiency and judicial economy as he now purports to be, he would have consented to jurisdiction in the Florida Case in January 2022. He chose not to, thus necessitating two separate litigations.[8] His (manufactured) concern now is disingenuous at best.

*Third,* the Florida Case has been set for trial in October 2023 since October 12, 2022. Warner Decl., Ex. G. If, as Evans now claims, it is crucial to schedule "the important pretrial deadlines" and the trial date in this case after the Florida Case's trial (*see* Mot. at p. 4), Evans should have moved to amend the Rule 16 Scheduling Order **10**

---

[8] Presumably, this was for Evans's own strategic reasons—or his counsel's. During the parties' August 14, 2023 meet and confer, Attorney Hildebrand, who as noted above also represents Horn in the Florida case, explained that the decision for Evans to refuse to consent to jurisdiction in the Florida case was driven at least in part by Attorney Hildebrand's concern that it was not in Horn's best interests to be a co-defendant with Evans in the same case. Warner Decl., ¶ 16. This is because whereas, as Attorney Hildebrand put it, Evans "confessed" at his deposition and owned up to his, Horn's, and SS's wrongdoing, Horn has taken a different path in the Florida Case and Evans's testimony therefore directly contradicts Horn's.

*months ago* when the Florida Case trial was moved to October 2023 (at the request of Attorney Hildebrand's other client, Horn). Instead, Evans waited 10 months—during which time his counsel never raised amending the Rule 16 Scheduling Order with IW and abided all of its deadlines—until 6:02 p.m. on the day of the dispositive motion deadline, *after* IW had already filed its summary judgment motion, to seek a continuance based on the trial date in the Florida Case, which had been in place for more than 10 months. This is the opposite of the diligence required to amend the scheduling order, and mandates the denial of his belated request. *Coles*, 2013 WL 1856002, at *2 ("Central to the required showing of diligence is whether … the movant was diligent in seeking amendment once the need to amend became apparent.").[9]

### 2.   Attorney Hildebrand did not "reasonably rely" on anything

Nor can Evans excuse his lack of diligence in failing to prepare his summary judgment motion by the deadline by claiming that Attorney Hildebrand "reasonably relied on representations by Plaintiff's counsel in early case conference [sic] that the parties would not pursue litigation of the Hawai'i case pending resolution of the Florida case." (Mot. at 2.)

As an initial matter, any discussions that parties may have had at the outset of

---

[9] There may be good cause to delay the trial in this case (but not dispositive motions) should the trial in the Florida case be delayed *due to that Court's schedule*, but that issue can be raised if and when it becomes necessary to do so. At the very least, if the Court is inclined to extend the current schedule, it should consider and resolve IW's summary judgment motion and limit the extension to all other deadlines.

this case about potentially staying this case pending resolution of the Florida Case were superseded by the Court's decision refusing any such stay. Never once since the Court's entry of the Rule 16 Scheduling Order 13 months ago have the parties so much as discussed renewing their request for a stay or modifying the Rule 16 Scheduling Order in any manner—including after October 12, 2022, when the trial in the Florida Case was set for October 2023—let alone requested such a modification from the Court. Perhaps the best evidence that there was no informal stay of the deadlines—and that Evans's counsel, themselves, do not even believe it to be true—is the fact that Evans both requested an extension to serve, and then served, affirmative and rebuttal expert reports (three in total) in this case in accordance with the deadlines in the Rule 16 Scheduling Order. Warner Decl., Exs. I, J. If Evans or his counsel truly believed that the deadlines in this case had informally been stayed by agreement, they would not have requested the extension or served the three expert reports. Rather, they would have said something at the time, as that deadline was approaching, and perhaps even filed this motion then, rather than lying in wait until literally hours before the deadline to file a summary judgment motion expired to do so—after IW had already filed its motion—without even discussing the issue ahead of time at the meet and confer detailed above.

Moreover, on August 11, 2023, when IW first requested a meet and confer on its summary judgment motion, Attorney Hildebrand could have said something, or at the

19

very least he should have said something at the meet and confer a few days later, rather than waiting ***ten more days*** to file the instant Motion.

### 3.     The only Party that could conceivably be prejudiced here is IW

Although Evans claims he will be prejudiced if the Motion is not granted, the opposite is true; IW will be prejudiced if the Motion is granted. It is well settled that "[p]rejudice to the non-moving party may serve as an additional reason to deny the motion, although an absence of prejudice does not justify granting the motion if the moving party was not diligent." *Schmidt*, 2009 WL 1789300, at *3. If Evans's Motion is granted, retroactively extending ***his*** deadline to move for summary judgment after IW already has filed its motion, Evans will be provided with a ***three-month*** free look at IW's summary judgment motion when preparing his own at his counsel's leisure. The Rule 16 Scheduling Order set a single date—August 21, 2023— for the parties to simultaneously file any dispositive motions. Neither party is entitled to an advance look at the other party's dispositive motion before preparing his or its own, much less a three-month preview. Yet that is exactly what Evans will have obtained by lying in wait for at least 10 days until after IW filed the summary judgment motion to spring into action and move unilaterally (and without meeting and conferring) for an extension. IW should not be penalized for its diligence and compliance with the Rules—

and Evans should not be rewarded for his gamesmanship.[10]

### 4. Evans should be required to respond to IW's summary judgment motion within one week of the Court's Order

Given the gamesmanship in which Evans and his counsel have been engaged—again, going so far at the August 30, 2023 meet and confer to admit that Evans had received most of what he wanted just by virtue of filing this Motion, and the fact that he has already received a *de facto* six week extension—at a minimum—as a result, Evans should be given no more than one (1) week following entry of this Court's order to file a response to IW's motion for summary judgment. Anything more than that would be unjust and would reward Evans's and his counsel's misbehavior.

### 5. Evans should be precluded from filing a summary judgment motion

In addition, because Evans did not obtain an extension of the dispositive

---

[10] Nor would holding Evans and his counsel to their poor strategic decisions unduly prejudice Evans. *Cf. Raya v. Calbiotech*, 2019 WL 11504688, at *4 (S.D. Cal. Nov. 26, 2019) ("[E]ven if this Court's order prejudiced Defendant, that a Court's order prejudices a party is not enough to constitute a manifest injustice, especially when that party's strategic decisions are partly to blame. . . . Here, Defendant could have avoided this ultimate situation had it asked the Court for an extension of fact discovery in a timely manner. . . .") (citing *Bridgestone Sports Co. Ltd. v. Acushnet Co*., 2007 WL 625851, at *2 (D. Del. Feb. 26, 2007) (finding no manifest injustice even though the result prejudiced the movant by foreclosing on a viable defense, because the movant's "inability to pursue his defense is the result of its own strategic litigation decisions, and the Court will not rescue [the movant] from its choices"); *Fox v. Am. Airlines, Inc.,* 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding no manifest injustice when the harm from the Court's order could "have been avoided through the exercise of due diligence" by the movant).

motion deadline before the deadline lapsed (as, indeed, was impossible, given that he waited until 6:02 p.m. on the day of the deadline itself to seek an extension), he was obligated to file any dispositive motion he wished to file on that date. As Evans did not do so, he should now be precluded from filing any dispositive motion. *See Young v. Kraus*, 2017 WL 390268, at *3 (D. Haw. Jan. 27, 2017) ("Plaintiff must submit the stipulation or file the motion [for an extension] ***before*** the original deadline.") (emphasis in original); *Keating v. Nordstrom, Inc.*, 2019 WL 7160382, at *2 (D. Alaska Dec. 4, 2019) (where plaintiffs "waited until" the deadline for filing a motion for class certification to move for an extension of that deadline, holding that plaintiffs "have not demonstrated good cause to modify the Court's pretrial scheduling order to further extend the class certification motion deadline"); *Jimenez v. Montgomery*, 2016 WL 4060099, at *1-2 (C.D. Cal. Mar. 24, 2016) (where pro se respondent waited "until Friday before a deadline on the upcoming Monday" to file a motion for an extension, "admonish[ing]" respondent "that he should have filed his extension motion further in advance of the answer deadline," and "[u]nless and until this Court granted his motion to extend the answer deadline, respondent was under an obligation to e-file an answer…by midnight on" the deadline, and "should not have assumed, as he apparently did, that the Court would grant the extension"); *Fitchett v. Wilson*, 2013 WL 5468389, at *1 (D.S.C. Sept. 30, 2013), *aff'd*, 561 F. App'x 256 (4th Cir. 2014) ("Plaintiffs' assumption that the Court would *grant* their

motion for a continuance…on the day the response was due was imprudent, and Plaintiffs must bear the consequences of not complying with a deadline absent a court-ordered extension. Indeed, the question of whether to extend procedural deadlines is one for the Court—not Plaintiffs.")

### C.  Evans's Counsel Should Be Ordered To Show Cause As To Why The Court Should Not Issue Sanctions

Evans's counsel should be ordered to show cause as to why the Court should not sanction them and award IW the fees it incurred responding to the Motion—just as the U.S. District Court for the Northern District of Illinois recently ordered Attorney Hildebrand to do. *See supra*, at n.6. The Motion is not only based almost entirely on blatant misrepresentations, but it could have been filed weeks, if not months, ago, before IW spent the time and resources to file its own summary judgment motion, which it did in reasonable reliance on the current case management order and the lack of any prior indication by Evans's counsel that they did not believe that the current case management order should apply—***even complying with the deadlines in that order themselves by serving three expert reports just a few weeks ago***.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion, preclude Evans from filing a (late) summary judgment motion, order him to file an opposition to IW's summary judgment motion within one week of the Court's Order, and order his counsel to show cause as to why the Court should not issue sanctions.

Dated:  Honolulu, Hawaii, September 11, 2023.

/s/ Christopher J. Cole
Christopher J. Cole
Peter A. Steinmeyer *(Pro Hac Vice)*
Erik W. Weibust *(Pro Hac Vice)*
A. Millie Warner *(Pro Hac Vice)*
Ridhi Madia *(Pro Hac Vice)*

Attorneys for Plaintiff
HH Associates, U.S., Inc.