**MARR JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

CHRISTOPHER J. COLE             5781-0
RONALD TANG                   11034-0
Pauahi Tower
1003 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700
ccole@marrjones.com

PETER A. STEINMEYER (Pro Hac Vice)
(MO Bar 38305; IL Bar No. 6211874)
A. MILLIE WARNER (Pro Hac Vice)
RIDHI D. MADIA (Pro Hac Vice)
ERIK W. WEIBUST (Pro Hac Vice)
EPSTEIN BECKER & GREEN, P.C.
227 West Monroe Street, Suite 3250
Chicago, IL  60606
Tel. No. (312) 499-1400
psteinmeyer@ebglaw.com
eweibust@ebglaw.com
mwarner@ebglaw.com
rmadia@ebglaw.com

Attorneys for Plaintiff
HH ASSOCIATES, U.S., INC.,
as successor to INNERWORKINGS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HH ASSOCIATES, U.S., INC., as successor to INNERWORKINGS, INC., | CIVIL NO. CV22-00062 JAO-KJM |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT RAYMOND EVANS'S OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT RAYMOND EVANS'S MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DEADLINES, FILED 10/19/2023; DECLARATION OF A. MILLIE WARNER; EXHIBITS A-D |
| vs. | |
| RAYMOND EVANS, | |
| Defendant. | |
| | Trial Date: January 16, 2024 |
| | Time: 9:00 a.m. |
| | Judge: Hon. Jill A. Otake |

**PLAINTIFF'S OPPOSITION TO DEFENDANT RAYMOND EVANS'S OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT RAYMOND EVANS'S MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DEADLINES, FILED 10/19/2023**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................... 1

II.  RELEVANT BACKGROUND .................................................................. 2

III.  ARGUMENT ............................................................................................. 3

    A.  Mr. Evans Applies the Incorrect Legal Standard and Cannot Satisfy the Correct Legal Standard that Magistrate Judge Mansfield's Order was "Clearly Erroneous or Contrary to Law" ................................................... 3

        1.  Mr. Evans waived any argument that Magistrate Judge Mansfield's Order is "clearly erroneous or contrary to law," and he cannot satisfy that standard even had he not waived it. ........................................... 3

        2.  Mr. Evans does not get a "do over" because he hired new counsel ........................................................ 6

    B.  Mr. Evans Will Not Be Unduly Prejudiced If the Court Declines to Reverse Magistrate Judge Mansfield's Order ................... 7

        1.  Mr. Evans is being indemnified by Smart Source. ................... 7

        2.  Any motion for summary judgment would be futile, and the inability to file such a motion is not prejudicial ........................................................................... 10

        3.  Mr. Evans still may oppose IW's motion for summary judgment and can make any appropriate arguments to the jury he would like ........................................ 12

    C.  IW Will Be Unduly Prejudiced If the Court Reverses Magistrate Judge Mansfield's Order .......................................... 13

    D.  Mr. Evans' Objection Should be Stricken or Denied Because he Failed to Comply with Local Rule 7.8 .............................. 14

    E.  Evans And His Counsel Should Be Ordered to Show Cause as to Why the Court Should Not Issue Sanctions ..................... 15

IV.  CONCLUSION ....................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aldaya v. Encore Cap. Grp., Inc.*,
2017 WL 11139923 (D. Haw. Mar. 7, 2017) ........................................................6

*CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*,
2011 WL 13202950 (E.D. La. Feb. 1, 2011) .........................................................5

*Grimes v. City & Cty. of S.F.*,
951 F.2d 236 (9th Cir. 1991) ................................................................................4

*Hall v. Mt. Terrace AOAO*,
2017 WL 4928652 (D. Haw. Sept. 18, 2017) .......................................................4

*Hasegawa v. Hawaii*,
2011 WL 6258831 (D. Haw. Dec. 14, 2011).........................................................4

*In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act
(FACTA) Litig.*,
2010 WL 4942645 (C.D. Cal. July 29, 2010)........................................................5

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................6

*Jun Zhang v. Troy Univ.*,
2012 WL 3630286 (M.D. Ala. Aug. 23, 2012) .....................................................7

*Mary T. v. Dep't of Edu., State of Hawai'i*,
637 F. Supp. 2d 856 (D. Hawai'i 2009) ...............................................................6

*Matthews v. Chevron Corp.*,
362 F.3d 1172 (9th Cir. 2004) ..............................................................................4

*McAllister v. Adecco Grp.*,
2016 WL 7477752 (D. Haw. Dec. 29, 2016).....................................................4, 5

*Middlemiss v. Black & Decker, Inc.*,
2008 WL 4415262 (D. Utah Sept. 24, 2008)........................................................4

*Monfort v. CKCG Health Care Servs., Inc.*,
  2020 WL 9599752 (N.D. Ga. Sept. 12, 2020)......................................................7

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
  2014 WL 3889717 (D. Haw. Aug. 7, 2014)........................................................13

*Provident Energy Assocs. of Mont. v. Bullington*,
  77 Fed. Appx. 427 (9th Cir. 2003)........................................................................6

*Rosario-Diaz v. Gonzalez*,
  140 F.3d 312 (1st Cir. 1998)...............................................................................14

*Schultz v. Wal–Mart Stores, Inc.*,
  68 Fed. Appx. 130 (9th Cir. 2003)........................................................................6

*Seven For All Mankind, LLC v. GenX Clothing, Inc.*,
  2006 WL 5720346 (C.D.Cal.2006) .......................................................................5

*Szabo v. Ryan*,
  571 F. App'x 585 (9th Cir. 2014) .........................................................................6

*Turner v. Imperial Stores*,
  1996 WL 738630 (9th Cir. Dec. 23, 1996)............................................................6

*U.S. v. U.S. Gypsum Co.*,
  333 U.S. 364 (1948).............................................................................................4

*United States v. Andies*,
  2013 WL 256761 (E.D. Tenn. Jan. 23, 2013) .......................................................7

*Williams v. McNeil*,
  557 F.3d 1287 (11th Cir. 2009) ............................................................................7

**STATUTES**

28 U.S.C. § 636(b)(1)(A) .........................................................................................4

**RULES & REGULATIONS**

Fed. R. Civ. P. 72(a).................................................................................................4

Local Rule 7.1 ........................................................................................................15

Local Rule 7.1(d) ...................................................................................................15

Local Rule 7.8 ...................................................................................14, 15

Local Rule 40.3 .......................................................................................3

Local Rule 74.1 .......................................................................................4

**OTHER AUTHORITIES**

14 Moore's Federal Practice § 72.11[1][a] (3d ed. 2010) .........................................5

Plaintiff, HH Associates, U.S., Inc., as successor to InnerWorkings, Inc. ("IW"), hereby opposes Defendant Raymond Evans's Objection to Magistrate Judge Mansfield's October 19, 2023 Order ("Objection") (ECF No. 60), in which Magistrate Judge Mansfield denied Mr. Evans's motion to continue the trial date and all pretrial deadlines by at least ninety days ("Motion to Indefinitely Continue") (ECF 29).

## I.   <u>INTRODUCTION</u>

Mr. Evans's Objection should be dead on arrival. Although he begins by representing to the Court that his "request for an extension was based on far more than simple attorney error or oversight" and that "the full context surrounding [his] request was not presented" (Obj. at 3), he then goes on to argue ***solely*** "attorney error and oversight" and to ***omit*** critical "context," including that Mr. Evans is being fully indemnified by his employer, Smart Source. This omission is particularly egregious in light of the fact that Mr. Evans's Objection is largely based on attempting to garner the Court's sympathy due to his age and purported financial wherewithal. But he will not have to pay any damages awarded in this case, and thus no sympathy is merited.

In any event, Mr. Evans cites the incorrect legal standard and does not argue that Magistrate Judge Mansfield's Order was "clearly erroneous or contrary to law," which is the correct standard of review. Thus, Mr. Evans has waived that argument (and he also waived the argument he actually makes, excusable neglect, because he did not raise it in his Motion to Indefinitely Continue).

Mr. Evans also omits that: (1) Attorney Daniel Hildebrand was only one of four attorneys formally representing him (Mr. Evans's Hawai'i legal team also included Mark Valencia, James Rooney, and Michelle Chapman from the venerable firm of Case Lombardi); (2) still other attorneys who are representing Smart Source and its co-defendant, Sara Horn, in the related Florida case also did work for Mr. Evans in this case and were fully aware of the agreement to use the discovery in the Florida case as the discovery in this case (*see* Declaration of A. Millie Warner ("Warner Decl.,") at ¶¶ 2–10); (3) Sara Horn's lead counsel in the Florida case, Jennifer Corinis, recently substituted in as Mr. Evans's counsel here; and (4) Attorney Chapman, a member in good standing of the Hawai'i bar, ***swore under oath*** that Mr. Evans consented to the Motion to Indefinitely Continue.

At bottom, Mr. Evans's prior lawyers made a tactical error that replacing them cannot remedy, even by falsely claiming, as his new lawyers do here, that a judgment would be financially ruinous to Mr. Evans. He does not get a "do over" just because he (or his indemnitor) hired new lawyers on his behalf.

## II.   <u>RELEVANT BACKGROUND</u>

In the interest of judicial economy, IW will not restate everything it wrote in its opposition ("Opposition") to Mr. Evans's Motion to Indefinitely Continue (ECF No. 38), which it incorporates herein by reference. What is worth noting, however, is that in response to an argument made by IW in opposition to Mr. Evans's Motion to

Indefinitely Continue (*i.e.*, that Mr. Evans did not comply with Local Rule 40.3), counsel stated unequivocally: "Rest assured that Ray has consented to the relief sought in this motion." Reply Br. at p. 9 (ECF No. 42). That assurance is supported by Attorney Chapman's declaration, in which she swore under oath that "Ray has consented to the Motion and to a continuance of the trial and pre-trial deadlines." ECF No. 42-1, Chapman Decl., ¶ 8. Attorney Chapman has not withdrawn her declaration, nor has Mr. Evans's new counsel withdrawn the motion supported by it (*i.e.*, his Motion to Indefinitely Continue). Yet, in his declaration here, Mr. Evans appears to represent under oath just the opposite:

> Mr. Hildebrand did not inform me that the deadline for filing a summary judgment motion on my behalf had been missed ***or that he had instead filed a motion for a three-month extension***. He also did not inform me that [IW] had filed a summary judgment motion against me or my right to file an opposition to [IW]'s motion.

Evans Decl., ¶ 6 (emphasis added). Both statements cannot be true.

## III.   ARGUMENT

### A.   Mr. Evans Applies the Incorrect Legal Standard and Cannot Satisfy the Correct Legal Standard that Magistrate Judge Mansfield's Order was "Clearly Erroneous or Contrary to Law"

#### 1.   Mr. Evans waived any argument that Magistrate Judge Mansfield's Order is "clearly erroneous or contrary to law," and he cannot satisfy that standard even had he not waived it.

Mr. Evans argues that the Court should reverse Magistrate Judge Mansfield's Order because he can demonstrate "excusable neglect." Obj. at 8–10. But that is not

the appropriate standard. Rather, the legal standard to be applied when a party appeals a pretrial non-dispositive matter determined by a magistrate judge is that "[s]uch an order may be reversed by the district court judge *only* when it is '*clearly erroneous or contrary to law*.'" *McAllister v. Adecco Grp.*, 2016 WL 7477752, at *1 (D. Haw. Dec. 29, 2016) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 74.1). "The threshold of the 'clearly erroneous' test is high and significantly deferential. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004); *Hasegawa v. Hawaii*, 2011 WL 6258831, at *1 (D. Haw. Dec. 14, 2011)). "Thus, the district court 'may not simply substitute its judgment for that of the deciding court'." *Hall v. Mt. Terrace AOAO*, 2017 WL 4928652, at *1 (D. Haw. Sept. 18, 2017) (citing *Grimes v. City & Cty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991)).

As an initial matter, Mr. Evans waived any argument that Magistrate Judge Mansfield's Order was "clearly erroneous or contrary to law" by not raising it in the Objection. *See Middlemiss v. Black & Decker, Inc.*, 2008 WL 4415262, at *2 (D. Utah Sept. 24, 2008) ("Plaintiff timely objects to the Order. However, because Plaintiff did not argue that any part of the Magistrate Judge's Order is clearly

4

erroneous or contrary to law, the Court will overrule Plaintiff's objections."). The Objection can, and should, be overruled on this basis alone.[1]

Regardless, under the appropriate legal standard, the Court can "only" reverse Magistrate Judge Mansfield's Order if it determines that the Order was "clearly erroneous or contrary to law." *McAllister*, 2016 WL 7477752, at *1. For all the reasons set forth in IW's Opposition to Mr. Evans's Motion to Indefinitely Continue, the Order objectively was not "clearly erroneous." *See* Opp., at 10–23. Nor was it "contrary to law." Indeed, in the decision Magistrate Judge Mansfield primarily relied upon in support of his Order, the Court held the following, citing multiple binding 9th Circuit decisions:

---

[1] Mr. Evans also waived any argument under the "excusable neglect" standard he asks the Court to apply by not raising it before Magistrate Judge Mansfield in Evans's Motion to Indefinitely Continue. *See CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, 2011 WL 13202950, at *1 (E.D. La. Feb. 1, 2011) ("Having failed to present its current arguments and evidentiary materials to the magistrate judge, [Plaintiff] waived its right to present those arguments or materials to this Court on appeal.") (citing *14 Moore's Federal Practice* § 72.11[1][a], at 72-51 (3d ed. 2010) ("A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order."); *In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 4942645 *3 n.1 (C.D. Cal. July 29, 2010) ("Further, any belated declarations or arguments that defendant may seek to present to the District Judge in the first instance may be found to have been waived.")); *see also Seven For All Mankind, LLC v. GenX Clothing, Inc.*, 2006 WL 5720346, at *3 (C.D.Cal.2006) ("The district judge will normally not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.")).

> Plaintiff cites only attorney oversight for failing to timely seek leave to amend the definition of the putative class. Attorney error and oversight do not establish diligence. *See, e.g., Provident Energy Assocs. of Mont. v. Bullington*, 77 Fed. Appx. 427, 428–29 (9th Cir. 2003) (attorney's misreading of complaint did not provide good cause amend seven months past the filing deadline); *Schultz v. Wal–Mart Stores, Inc.*, 68 Fed. Appx. 130, 131–33 (9th Cir. 2003) (attorney error on procedural requirements did not provide good cause to amend six months past the deadline); *Turner v. Imperial Stores*, No. 95–56319, 1996 WL 738630, at *1 (9th Cir. Dec. 23, 1996) (attorney's failure to notice errors in complaint until seven months after filing did not provide good cause to amend). Accordingly, Plaintiff was not diligent in seeking to amend her definition of the putative class.

*Aldaya v. Encore Cap. Grp., Inc.*, 2017 WL 11139923, at *3 (D. Haw. Mar. 7, 2017); *see also Szabo v. Ryan,* 571 F. App'x 585, 586 (9th Cir. 2014) ("attorney error of that nature does not excuse [plaintiff's] lack of diligence in failing to file [a habeas petition] earlier"). Moreover, "[a]s the Ninth Circuit Court has admonished, a scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Mary T. v. Dep't of Edu., State of Hawai'i*, 637 F. Supp. 2d 856, 867 (D. Hawai'i 2009) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)). Accordingly, Magistrate Judge Mansfield's Order was not "clearly erroneous or contrary to law."

## 2. Mr. Evans doesn't get a "do over" because he hired new counsel.

What Mr. Evans seems to be insinuating without saying it out loud is that he should get a "do over" because his prior counsel allegedly failed him, and he has hired

new counsel. But that is not a valid argument. *See United States v. Andies*, 2013 WL 256761, at *1 (E.D. Tenn. Jan. 23, 2013) ("This court will not allow a 'do-over' merely because a defendant has retained a new lawyer."); *Monfort v. CKCG Health Care Servs., Inc.*, 2020 WL 9599752, at *3 (N.D. Ga. Sept. 12, 2020) ("Defendant may not get a do-over now . . . because it hired new attorneys.") (citing *Jun Zhang v. Troy Univ.*, 2012 WL 3630286, at *1 (M.D. Ala. Aug. 23, 2012) (holding that "the filing of additional or new evidence is generally not appropriate in an objection to a recommendation" after plaintiff retained new counsel)). "It would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Monfort*, 2020 WL 9599752 at *3) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)).

### B.    Mr. Evans Will Not Be Unduly Prejudiced If the Court Declines to Reverse Magistrate Judge Mansfield's Order

#### 1.    Mr. Evans is being indemnified by Smart Source.

Mr. Evans attempts to garner the Court's sympathy by pointing out that he is a "73-year-old salesman" and that his "entire life savings, and all of his assets, including his ancestral home, are at risk" if he is found liable for the $5.57 million in damages IW is seeking.[2] But this omits a critically important fact: Smart Source has agreed to

---

[2] To be clear, IW is seeking far more than that in punitive and exemplary damages and attorneys' fees.

indemnify Mr. Evans for any damages that may be awarded against him, as confirmed in this email from Smart Source's Vice President of Sales, Scott Rich, to Lori Iwata, one of the IW sales reps that Mr. Evans improperly solicited (*i.e.*, Mr. Evans was part of the "group" Mr. Rich mentions below):

| | |
|---|---|
| **From:** | Scott Rich <srich@smartsourcellc.com> |
| **Sent:** | Thursday, January 30, 2020 1:59 PM |
| **To:** | Lori Iwata |
| **Subject:** | RE: Smart Source Employment Documents - Revised Offer Letter Date |

On Wed, Jan 29, 2020 at 1:57 AM Scott Rich <srich@smartsourcellc.com> wrote:

Good morning Lori!

It was great speaking with you yesterday. As a follow up to our conversation, attached is a revised offer letter with a date of February 17, aligning with your start date of February 17.

On a separate note, please accept this email as written confirmation of Tom D's comments during our dinner last week regarding standing behind your group should a legal action take place. As Tom also discussed, this would be based on following the directions of our attorney should a legal action take place.

Warner, Decl., Ex. A. Mr. Rich further confirmed this under oath in his deposition:

> Q.    Did you offer to indemnify these folks?
> A.    After we understood that there were --
> that we were not going to be receiving any executed
> agreements, we did.  It was an easy promise
> considering the fact that in our eyes, no one was
> doing anything wrong because we had no
> documentation otherwise.

> Q.    So what's the need to indemnify somebody
> if they didn't do anything wrong?
> A.    They requested it, so, therefore, it was
> an easy promise for us.

*Id.*, Ex. B. Jack Huber, Smart Source's then-President, testified under oath to the same:

> ```
> Q    Has Smart Source agreed to indemnify the
> former InnerWorkings Hawaii reps against potential
> litigation from InnerWorkings?
> ```

> ```
> A    My understanding from Tom is that it has.
> ```

*Id.*, Ex. C.

Indeed, this is further evidenced by Mr. Evans' own sworn statement here, in which he says that Smart Source's CEO, Thomas D'Agostino (the "Tom" referenced in Mr. Rich's email and Mr. Huber's testimony above), informed him that "Mr. Hildebrand would be withdrawing as my counsel on or about October 11, 2023." Evans Decl., ¶ 9. If Smart Source were not indemnifying Mr. Evans and in complete control of his legal defense, then Mr. D'Agostino would have no right to terminate Attorney Hildebrand and simply "inform" Mr. Evans of that fact.[3] Thus, Mr. Evans will not be prejudiced in the least by not having the opportunity to file a motion for summary judgment because he is not paying his own legal fees and if he is found liable, he will not be responsible for paying a single penny of the damages awarded.[4]

---

[3] In fact, Mr. D'Agostino does not have the right to do so under any circumstances, as Attorney Hildebrand represented Mr. Evans, not Mr. D'Agostino or Smart Source. This level of control and micromanagement by Mr. D'Agostino— including firing Mr. Evans' lawyer without Mr. Evans even knowing about it ahead of time, and discussing Mr. Hildebrand's advice—further raises the question as to whether Mr. Evans has waived the attorney-client privilege. All rights are reserved.

[4] Moreover, if Mr. Evans can establish that Attorney Hildebrand and/or

Accordingly, contrary to Mr. Evans's misleading arguments to the Court, he will not have to pay any fees or damages awarded in this case, and thus will not be unduly prejudiced in that manner.

> **2.   Any motion for summary judgment would be futile and Mr. Evans will not be unduly prejudiced by not being permitted to file one.**

The inability to file a summary judgment motion will also not unduly prejudice Mr. Evans because any such motion would be futile. IW has Mr. Evans dead to rights on liability. Mr. Evans admittedly sent IW's confidential information to Sara Horn, a former IW executive and current Chief Operations Officer at Smart Source, on December 15, 2019—*two months before his resignation*—admitting that doing so was wrong and that he could be fired for it, begging Ms. Horn to "[p]lease protect me":

From: evansr007@hawaii.rr.com
To: "SARAJHORN@GMAIL.COM"
Cc:
Sent: Sunday December 15 2019 10:44:56AM
Subject: Hawaii Sales Team

Good morning Sara,

I hope you're enjoying your time in the Islands and your Helicopter adventure.

I had Clayton, Lori, Bill & Edwin over this past Friday to hear the latest.

First, of all I'd like to let you know I'm trusting you with the inventory report you asked to see. There's only one place that could've come from and that's me. IW will simply fire me if they found out I sent that to you. You know all the Tests we take every year... Compliance, Bribery, Privacy and Harassment. I don't feel sending that to you was the "right" thing to do and am concerned. Please protect me.

*See* Opposition to Mr. Evans's *Daubert* Motion (ECF No. 61), at 3–4. Despite

---

Attorney Chapman committed malpractice, which IW certainly does not concede, then he can sue them and recover under their insurance policies.

admitting that his actions were wrong, Mr. Evans continued to work against IW's interests for Smart Source, including: (1) sending *additional* confidential information to Ms. Horn/Smart Source; (2) soliciting IW's customers to move their business to SS *the week before he resigned* (unbelievably claiming that he thought he could steal IW's customers *before leaving IW*, so long as he did not do so afterward—an admission that he breached his duty of loyalty); (3) entering account information for IW customers into Smart Source's systems and placing their "active orders" with Smart Source while still employed by IW; (4) recruiting all of the other IW sales reps to join him in resigning from IW and moving to Smart Source; and (5) assisting all of the other IW sales reps in stealing IW's customers after joining Smart Source. *Id.*

Thus, the only real argument that Mr. Evans would make on summary judgment here is the same one that Smart Source and Ms. Horn made in the Florida case, which is that IW cannot establish damages.[5] Mr. Evans made this exact argument in his *Daubert* motion (ECF No. 46), and IW opposed it (ECF No. 61), so the argument is

---

[5] Mr. Evans may also argue, as he did in response to IW's Motion for Summary Judgment, that he is entitled to summary judgment on IW's contract claim because IW cannot establish the existence of a binding confidentiality agreement. But this argument would be frivolous, as it ignores Mr. Evans's admission that he signed and was bound by IW's standard confidentiality agreement and his admission (in the above quoted email) that providing the requested inventory report to Smart Source violated his confidentiality obligation to InnerWorkings. Warner Decl., Ex. D ("Q: Do you recognize this document [marked as Exhibit 3], Mr. Evans? A: Yes, I believe the -- this is what we had to click on or sign. Q: And did you acknowledge this agreement when you were at InnerWorkings? A: I Must have. Q: So you agreed to abide by this confidentiality agreement? A: I signed it or clicked on acknowledging it.").

already before the Court, which can see for itself the futility thereof. In the interest of efficiency and judicial economy, IW will not restate its position again here.[6]

Accordingly, upholding Magistrate Judge Mansfield's Order will not unduly prejudice Mr. Evans because any summary judgment motion Mr. Evans might file would be futile.

### 3.      Mr. Evans still may oppose IW's motion for summary judgment and make any appropriate arguments to the jury he would like.

Even though Mr. Evans missed the deadline to file a motion for summary judgment, he can still make the same legal and factual arguments he would have raised in any such motion in opposition to IW's summary judgment motion and at trial. He is not being deprived of any legal or factual arguments. Indeed, as noted above, Mr. Evans has already raised his summary judgment arguments in his *Daubert* Motion and Opposition to IW's Motion for Summary Judgment, and he can raise them again in connection with jury instructions and a motion for directed verdict, and he can argue them to the jury.[7] Thus, Mr. Evans is not being unduly prejudiced in this manner either.

---

[6] Although one of IW's arguments is that Mr. Evans should have raised this argument on summary judgment but waived the right to do so, the Court can see the lack of any merit that argument has in Mr. Evans's *Daubert* Motion and IW's Opposition.

[7] Indeed, the damages issue truly is one that a jury must decide in any event. *See* Opposition to Daubert Motion (ECF No. 61), at 9–14 ("Mr. Evans next argues that, even if IW's Hawaii business is a "business" (it is), it was not "completely destroyed" because the business had *de minimis* trailing revenues after February 14, 2020. But that ignores that whether a business is "'completely destroyed' . . . is *a mixed question of law and fact*," and while "[d]etermining the proper *method* of calculating damages is a

*Cf. Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 2014 WL 3889717, at \*4 (D. Haw. Aug. 7, 2014) ("Defendants assert that they would be prejudiced, and Plaintiffs would not be prejudiced, if this Court prohibits them from filing a summary judgment motion. Insofar as the focus of the Rule 16(b)(4) good cause inquiry is on Defendants' diligence, and this Court has found that Defendants have not been diligent as to the filing of dispositive motions, this Court does not reach the issue of prejudice. To the extent that the Appeal challenges the magistrate judge's finding regarding lack of prejudice, the Appeal is DENIED.").

C. **IW Will Be Unduly Prejudiced If the Court Reverses Magistrate Judge Mansfield's Order**

If the Court reverses Magistrate Judge Mansfield's Order, however, IW will be unduly prejudiced. In addition to the reasons set forth in IW's Opposition to the Motion, which IW will not restate here, the Parties agreed to jointly submit a Joint Motion to Stay Deadlines Until After Summary Judgment and *Daubert* Rulings and to Set a Scheduling Conference (ECF No. 52) (the "Joint Motion"). The relief requested in the Joint Motion was to delay the trial and pretrial deadlines ***solely*** until the Court ruled on IW's pending Motion for Summary Judgement (ECF No. 52) and the Parties' respective *Daubert* Motions (ECF No. 31, 32, and 46).[8]

---

question of law," "*[d]etermining whether [the subject business] was 'completely destroyed' is a <u>factual question</u>*.") (record and legal citations omitted).

[8] Even if the Joint Motion is granted, IW's arguments herein still stand. As the First Circuit has explained:

At no time prior to IW agreeing to the Joint Motion did Mr. Evans ever inform IW that he intended to file this Objection, which, if granted, necessarily would delay the trial and pre-trial deadlines by weeks, if not months, while Mr. Evans briefs his summary judgment motion and IW briefs its opposition, and the Court considers it. This would provide an unfair advantage (because Evans has had IW's motion for summary judgment since August 21, 2023) and would delay IW's day in court.

### D.   Mr. Evans' Failed to Comply with Local Rule 7.8

Finally, Mr. Evans did not meet and confer prior to filing the Objection, as

---

[T]he district court did not predicate its decision to eschew consideration of the appellants' motions on a perceived need to start trial on a specific date, but, rather, did so as a sanction for the appellants' failure to comply with the scheduling order. Case-management authority enables the court to shepherd cases towards fair, yet efficient, resolution. Such empowerment not only permits the court to grant firm trial dates, but also permits it to group dispositive motions, forecast the likely effect of interlocutory appeals, and otherwise ensure that a case moves forward in a logical, reasonably expeditious progression.

Litigants could complicate exponentially the efficacious management of crowded dockets if left free to engage in the kind of dilatory behavior exhibited by the appellants as long as no firm trial date was in prospect. *See Guzmán–Rivera,* 98 F.3d at 668.

We need go no further. Given the baldness of the appellants' transgressions, the potential prejudice to the plaintiffs and to the orderly administration of the court's docket caused by the late filings, and the need to deter such conduct, we think the district court's refusal to entertain the appellants' motions for summary judgment is a concinnous sanction, well within the court's discretion.

*Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 316 (1st Cir. 1998).

required by Local Rule 7.8 and the General Civil Case Procedures Before Judge Otake ("Otake Procedures"). According to Local Rule 7.1, the Objection should be treated as a motion, and is thus subject to the meet and confer requirements of Local Rule 7.8. L.R. 7.1(d) ("The court may set any of the foregoing motions [including "objections to a magistrate judge's report and recommendation" and "objections to a magistrate judge's report and recommendation"] for hearing sua sponte or upon application by a party."). Thus, the Objection should be stricken or denied. Otake Procedures, § II (Pre-Filing Conferences (Local Rule 7.8)) ("Failure to strictly comply with the Court's requirements or Local Rule 7.8 will result in the striking and/or the denial of the motion.").

### E.  Evans And His Counsel Should Be Ordered to Show Cause as to Why the Court Should Not Issue Sanctions

Because the Objection is frivolous given that Mr. Evans does not even cite the correct legal standard and omits critical facts in a cynical attempt to garner the Court's sympathy, the Court should order Evans and his counsel to show cause as to why the Court should not sanction them and award IW the fees it incurred responding to this Objection. Magistrate Judge Mansfield declined to do so in response to a request by IW, although he certainly had grounds to do so, but this new misconduct warrants this Court issuing such an order at this time.

## IV.   __CONCLUSION__

For the foregoing reasons, IW respectfully requests that the Court overrule Mr. Evans's Objection. He waived any argument that Magistrate Judge Mansfield's Order was "clearly erroneous and contrary to law," and it objectively is not, and while Mr. Evans will not be unduly prejudiced if the Order stands, IW will be unduly prejudiced if it is reversed.

Dated:  Honolulu, Hawaii, November 7, 2023.

/s/ Christopher J. Cole
Christopher J. Cole
Peter A. Steinmeyer *(Pro Hac Vice)*
Erik W. Weibust *(Pro Hac Vice)*
A. Millie Warner *(Pro Hac Vice)*
Ridhi Madia *(Pro Hac Vice)*

Attorneys for Plaintiff
HH Associates, U.S., Inc.