BRONSTER FUJICHAKU ROBBINS
A Law Corporation
MARGERY S. BRONSTER      4750
LANSON K. KUPAU          5687
KELLY HIGA BROWN         9556
LANSON K. KUPAU II       11737
1003 Bishop Street, Suite 2300
Honolulu, Hawaiʻi 96813
Telephone: (808) 524-5644
Facsimile: (808) 599-1881
E-mail:  mbronster@bfrhawaii.com
         lkupau@bfrhawaii.com
         khiga@bfrhawaii.com
         dkupau@bfrhawaii.com

GREENBERG TAURIG, P.A.
Jennifer W. Corinis (pro hac vice)
101 E. Kennedy Blvd., Suite 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
E-mail: jennifer.corinis@gtlaw.com

Attorneys for Defendant
RAYMOND EVANS

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HH ASSOCIATES, U.S., INC., as successor to INNERWORKINGS, INC.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RAYMOND EVANS,<br><br>　　　　　Defendant. | CV 22-00062-JAO-KJM<br><br>**DEFENDANT RAYMOND EVANS'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION OF JESSE A. ULTZ AND FOR DETERMINATION OF APPLICABLE DAMAGES MODEL FOR CLAIMS AGAINST DEFENDANT [DKT. 46] FILED OCTOBER 18, 2023**<br><br>Hearing:<br>Date: December 6, 2023<br>Time: 9:00 a.m.<br>Judge: Honorable Jill A. Otake<br><br>Trial Date:<br>To be re-scheduled. [ECF No. 67] |

2

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT.....................................................................................................2

    A.   Ultz's theory is irrelevant and excludable because neither IW nor its manufactured "Hawaii business" segment were "completely destroyed" as required by the fair market value damages theory.....................................................................................3

    B.   Hawaii law does not recognize the complete destruction, fair market damages theory..........................................................................4

    C.   Ultz unreasonably accepted IW's speculative prediction that its declining middle market business would have experienced growth in spite of that trend. ...............................................................6

III. CONCLUSION...................................................................................................7

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579, 589 (1993)……………………………………………………4

*Henricksen v. ConocoPhillips Co.*,
605 F. Supp. 2d 1142, 1153 (E.D. Wash. 2009)………………………….4

*In re Sherwood Invs. Overseas Ltd., Inc.*,
2015 WL 4486470, at *24 (Bankr. M.D. Fla. July 22, 2015)……………….5

*Kane v. PaCap Aviation Fin., LLC*,
652 B.R. 184, 212 (D. Haw. 2023)………………………………………….4

*United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*,
929 P.2d 99 (Haw. Ct. App. 1996)……………………………………………3

ACTIVE 691526308v1

**DEFENDANT RAYMOND EVANS'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION OF JESSE A. ULTZ AND FOR DETERMINATION OF APPLICABLE DAMAGES MODEL FOR CLAIMS AGAINST DEFENDANT [DKT. 46] FILED OCTOBER 18, 2023**

Defendant RAYMOND EVANS ("**Defendant**"), by and through his attorneys, BRONSTER FUJICHAKU ROBBINS, a law corporation, and GREENBERG TRAURIG, P.A., hereby submits this Reply in Support of his Motion to Exclude Expert Opinion of Jesse A. Ultz and for Determination of Applicable Damages Model for Claims against Defendant [Dkt. 46] filed October 18, 2023.

**I.     INTRODUCTION**

InnerWorkings (IW) (succeeded by HH Associates, U.S., Inc.) claims that Mr. Evans' conduct "directly caused the complete destruction of IW's Hawai'i business, irrespective of SS's or Ms. Horn's related conduct," and seeks to recover as damages from Mr. Evans the fair market value of its "Hawaii business." [Dkt. 61 at 4]. In other words, IW argues that Raymond Evans, a single salesperson[1] who left a multi-billion dollar company to sell paper at a competitor, somehow caused the "complete destruction" of IW's "Hawaii business," although there was no discrete "Hawaii business" division of its company, never mind one that was "completely destroyed." Worse, this Court does not recognize the "complete destruction" measure of

---

[1] HH makes clear its intention to fight this proxy war against SS by insisting that a single salesperson, Mr. Evans, brought down an entire division of its company, and seeks to hold him liable for the value of that faux division, which it claims is $5.7 million, with a conclusory statement that SS would "ostensibly" be indemnifying Mr. Evans [Dkt. 61 at 5].

1

damages. IW's valuation expert, Jesse Ultz, opines *only* on this unproven and unrecognized damages theory. Contrary to IW's claim, this is not an argument for summary judgment; rather, Mr. Evans argues that this Court must exercise its gatekeeping function to keep an unreliable, irrelevant "expert" opinion from the jury.

**II.     ARGUMENT**

IW wastes more than four pages attempting to poison the well against Mr. Evans instead of responding to the substance of his argument; IW claims that Evans's *Daubert* motion is "a transparent effort to retaliate" for IW's own "proper" *Daubert* motions and rehashes its one-sided story that Mr. Evans engaged in "secrecy, disloyalty, and dishonor." But there are two arguments that IW cannot avoid, and fails to rebut:

1.     While IW insists that Hawaii law applies to its claims against Evans, it tries to avoid the fact that Hawaii does not recognize the "total destruction" valuation theory (even if there was a "Hawaii business" that was, contrary to the record, "completely destroyed.")

2.     An expert like Ultz can—and should—be excluded for peddling a faulty damages theory as Ultz does here. Whether the damages theory of a damages expert is accepted and reliable are the hallmarks of a *Daubert* analysis, one that Ultz fails.

2

A. **Ultz's theory is irrelevant and excludable because neither IW nor its manufactured "Hawaii business" segment were "completely destroyed" as required by the fair market value damages theory.**

First, as it has elsewhere, IW tries to finesse its damages argument by suggesting that it can get diminution in value for losses attributable to trade secret claims. [Dkt. 61 at 6]. It also cites to various learned treatises and out-of-circuit cases for the general proposition that fair market value is a common measure of damages in destruction-of-business cases, and cites a case from the District of Oregon and other, non-Hawaii, Ninth Circuit cases. [Dkt. 61 at 6-7]. But it is telling that IW cannot refute the fact that under Hawaii law, the total-destruction theory is simply not recognized.

The Hawaii case IW cites is easily distinguishable. In *United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 929 P.2d 99 (Haw. Ct. App. 1996), Kleenco rented a truck from the plaintiff for which it contractually agreed to take "full responsibility" for "all loss or damage to vehicle (regardless of negligence)." *Id*. at 104. Kleenco left the keys in the truck, unattended, and it was stolen. The court concluded that Kleenco was liable and that the measure of damages was the replacement value of the stolen truck. Contrary to IW's argument, the *Kleenco* case did not pronounce support for the market-value damages measure in a "similar context." [Dkt. 61 at 7]. The "market value" referenced in *Kleenco* referred to the

3

cost of buying another truck, not assigning a fair market value to an ostensibly "destroyed" business. It is distinguishable, irrelevant, and unhelpful.

The flaws in Ultz's opinion go straight to its lack of reliability, which renders it excludable under *Daubert*. Expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Reliability, in turn, considers whether: (1) the reasoning or methodology underlying the testimony is scientifically valid; and (2) whether that reasoning or methodology properly can be applied to the facts in issue. *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1153 (E.D. Wash. 2009) (citing *Daubert*). Here, the methodology Ultz uses—total destruction—*cannot* be applied to the facts in issue, because IW's business was not completely destroyed. This Court has noted that many Courts exclude expert testimony if the expert based the damages calculations on the wrong method of calculating damages or the wrong valuation date. *See, e.g., Kane v. PaCap Aviation Fin., LLC*, 652 B.R. 184, 212 (D. Haw. 2023) (finding expert's increasing liability damages theory unreliable and excluding same). Thus, Ultz's testimony should be excluded.

**B.   Hawaii law does not recognize the complete destruction, fair market damages theory.**

IW cites to several Florida cases to support its argument that its "Hawaii business" was completely destroyed as of IW's selected date, February 14, 2020. It does so because there are no Hawaii cases to support this theory. In any event, the

4

Florida cases IW cites, even if this Court considered them, do not support IW's argument.  In *In re Sherwood Invs. Overseas Ltd., Inc.*, 2015 WL 4486470, at *24 (Bankr. M.D. Fla. July 22, 2015), the Bankruptcy Court noted that there was a factual dispute because Sherwood claimed its business was not destroyed, and therefore was entitled to lost profits.  The Bankruptcy Court noted that "*[i]n Florida*, if a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss, not lost profits." *Id*. at *24.  Thus, *Sherwood* does not establish a blanket rule that whether a business was destroyed is always a question of fact barring summary judgment, and was clearly limited to Florida state law, which is wholly inapplicable here.[2]

    IW has elected to pursue the "total destruction" theory in this case, where damages are governed by Hawaii law, and tries to avoid the fact that Hawaii simply does not recognize this measure of damages for a trade secret case.  IW must be held to that decision.  Florida cases applying Florida law have no bearing on this issue. IW's expert, Ultz, only offers an opinion on this unsupported theory. His testimony should be excluded.

---

[2] Notably, the *Sherwood* Court went on to hold that because Sherwood elected to hire experts to opine only on lost profits, which the Court concluded was the wrong measure of damages, "Sherwood's expert reports . . . are inapposite, used the wrong method for calculating damages, and will be excluded." *Id*. at *27.  The same is true for Ultz's opinion here.

5

C. **<u>Ultz unreasonably accepted IW's speculative prediction that its declining middle market business would have experienced growth in spite of that trend.</u>**

IW tries, but fails, to rebut Mr. Evans's argument that Ultz unreasonably assumed that IW's declining business would grow by 3.3% based on representations by IW, including Mr. Brad Dehart. IW accuses Mr. Evans of "downplaying" Ultz's testimony explaining the reason for his decision, and argues only that Ultz believed the business would increase in line with inflation. [Dkt 61 at 18 n.22]. But that is no answer; IW's revenues were steadily decreasing, and the only basis for Ultz's assumption that it would improve was the fact that Mr. Dehart "was brought in to turn around IW's business in its middle market overall." *Id*. at 18.

Finally, IW's argument that Evans "*inexplicably chose not to depose Mr. DeHart*, and thus has no basis for his bald assertion that Mr. Ultz's assumption has no factual basis" [Dkt. 61 at 18], is disingenuous. As IW has acknowledged in filings with this Court, "[t]he parties had agreed that the discovery taken in the Florida case would be used as the discovery in this case, and neither party ever sought to take additional discovery in this case." [Dkt. 38 at 8 n. 4, Warner Decl., ¶ 17]. Despite this representation to the Court, IW argues that Mr. Evans "fail[ed] to build an appropriate record" and was responsible for the lack information about the basis for Mr. DeHart's rosy prediction because he, like IW, did not seek to take additional discovery in this case. [Dkt. 38 at 18 & n.23]. This deflection cannot mask the fact

that Ultz unreasonably relied on a speculative, baseless assumption by IW executives that its declining middle-market business would suddenly start making money. That Ultz included this prediction in his calculation of damages further renders his opinion unreliable.

### III. CONCLUSION

Based on the foregoing, Defendant respectfully submits that Mr. Ultz's testimony should be excluded

DATED: Honolulu, Hawai'i, November 13, 2023.

/s/    Jennifer W. Corinis
JENNIFER W. CORINIS (*pro hac vice*)
MARGERY BRONSTER
LANSON KUPAU
Attorneys for Defendant
RAYMOND EVAN