IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HH ASSOCIATES, U.S., INC., as successor to INNERWORKINGS, INC., | CIVIL NO. CV22-00062 JAO-KJM |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| RAYMOND EVANS, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION

## **TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................. 2

    A.    IW Sues Evans for, *Inter Alia*, His Wrongful Solicitation
          of IW's Hawaiʻi Customers ..................................................... 2

    B.    Evans Never Disclosed Any Customers as Witnesses on
          Whose Testimony He Intended to Rely During 23
          Months of Discovery ............................................................... 2

    C.    Evans Submitted Perjurious Declarations from
          Previously Undisclosed Witnesses on Summary
          Judgment ................................................................................. 4

    D.    IW Filed a Similar Motion in the Florida Action Where
          Evans's Current and Prior Counsel Both Represent(ed) a
          Party ......................................................................................... 7

    E.    IW Has Also Already Raised this Issue in this Case .......... 8

II.   ARGUMENT ..................................................................................... 8

    A.    The Customer Declarations Must Be Precluded Under
          Rule 37(c)(1) Because Evans Failed to Identify the
          Declarants in His Rule 26(a) Initial Disclosures ................. 8

    B.    Rule 37(c)(1) Sanctions Are Required in This Case .......... 10

          1.    Evans's Failure to Disclose Was Not
                "Substantially Justified" ........................................... 10

          2.    Evans's Failure to Disclose Was Not "Harmless" ................. 12

          3.    Preclusion Is the Appropriate Sanction Under Rule
                37(c)(1) ........................................................................ 15

                a.    Evans Has No Justification for His Failure
                      to Disclose These Witnesses ......................... 16

                b.    The Declarations Are Not "Important" to
                      Evans's Case .................................................. 16

c.     IW Would Suffer Prejudice from Having to
                Reopen Fact Discovery After Having
                Moved for Summary Judgment ................................... 17

        d.     A Continuance Is Not Appropriate Here,
                Given the Age of the Case and The Fact
                That IW Has Moved for Summary Judgment ............. 17

   C.     Evans's Contention That the Declarations are not False is
          Preposterous ..................................................................................... 19

   D.     Evans And His Counsel Should Also Be Sanctioned for
          Submitting Demonstrably False and Perjurious
          Declarations on Summary Judgment ................................................. 20

III.    CONCLUSION ............................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008) .................................................................9

*Acrotube, Inc. v. J.K. Fin. Grp., Inc.*,
653 F. Supp. 470 (N.D. Ga. 1987)...............................................................23, 24

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
2014 WL 1243685 (S.D.N.Y. Mar. 26, 2014)............................................13, 17

*Arrant v. Richardson*,
2019 WL 7630864 (C.D. Cal. Dec. 10, 2019)...................................................21

*Barticheck v. Fidelity Union Bank/First Nat. State*,
680 F. Supp. 144 (D.N.J. 1988)........................................................................23

*Chambers v. Nasco, Inc.*,
501 U.S. 32 (1991)............................................................................................23

*Coble v. Renfroe*,
2012 WL 4971997 (W.D. Wash. Oct. 17, 2012)..............................................21

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) ............................................................................23

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) ............................................................9, 12, 13, 15

*Emmpresa Cubana Del Tabaco v. Culbro Corp.*,
213 F.R.D. 151 (S.D.N.Y. 2003) ......................................................................18

*Every v. Makita U.S.A., Inc.*,
2005 WL 2757952 (S.DN.Y. Oct. 24, 2005)....................................................14

*Finwall v. City of Chicago*,
239 F.R.D. 494 (N.D. Ill. 2006)........................................................................15

*Fleming v. Verizon N.Y., Inc.*,
  2006 WL 2709766 (S.D.N.Y. Sept. 22, 2006) ...................................................14

*Hertz v. Luzenac Am., Inc.*,
  2006 WL 994431 (D. Colo. Apr. 13, 2006) .......................................................12

*InnerWorkings, Inc. v. Horn, et al.*,
  C.A. No. 8:21-cv-00903 ......................................................................................1

*Jaisan, Inc. v. Sullivan*,
  178 F.R.D. 412, 415–16 (S.D.N.Y.1998) ..........................................................21

*Jeter v. N.Y.C. Dep't of Educ. of City of New York*,
  2012 WL 2885140 (E.D.N.Y. July 13, 2012).....................................................14

*Juarez v. Delgado*,
  2016 WL 3660613 (C.D. Cal. Feb. 23, 2016) ....................................................23

*Lawver v. Hillcrest Hospice, Inc.*,
  300 Fed. Appx. 768 (11th Cir. 2008) (*per curiam*) (unpublished)....................11

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ..............................................................................23

*Lipari v. U.S. Bancorp, N.A.*,
  2008 WL 2874373 (D. Kan. July 22, 2008) .......................................................12

*Mifflinburg Tel., Inc. v. Criswell*,
  277 F. Supp. 3d 750 (M.D. Pa. 2017)..................................................................23

*Morritt v. Stryker Corp.*,
  2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ...............................................13, 18

*Nosal v. Granite Park LLC*,
  269 F.R.D. 284 (S.D.N.Y. 2010) ........................................................................18

*Pal v. N.Y. Univ.*,
  2008 WL 2627614 (S.D.N.Y. June 30, 2008) ....................................................17

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006) ...............................................................................15

*Pete's Towing Co. v. City of Tampa, Fla.*,
   648 F. Supp. 2d 1276 (M.D. Fla. 2009)................................................................9

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
   2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013), *adopted as modified*, 2013
   WL 5502852 (E.D.N.Y. Oct.1, 2013)..............................................................14

*Point Prods. A.G. v. Sony Music Entm't*,
   2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ....................................................18

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A.*,
   2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011)..................................................13

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980).........................................................................................23

*Rogers v. AC Humko Corp.*,
   56 F.Supp.2d 972 (W.D. Tenn. 1999) ..............................................................22

*Ruhland v. Walter Kiddle Portable Equip., Inc.*,
   179 F.R.D. 246 (W.D. Wis. 1998).....................................................................14

*Saudi v. Valmet-Appleton, Inc.*,
   219 F.R.D. 128 (E.D. Wis. 2003) .....................................................................15

*Scott v. Metro. Health Corp.*,
   234 Fed. Appx. 341 (6th Cir.2007)...................................................................21

*Spotnana, Inc. v. Am. Talent Agency, Inc.*,
   2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010)......................................13, 15, 18

*Stern v. Regency Towers, LLC*,
   886 F. Supp. 2d 317 (S.D.N.Y. 2012) ..............................................................21

*Trs. of Plumbers & Steamfitters Loc. Union No. 43 Health & Welfare Fund
   v. Crawford*,
   573 F. Supp. 2d 1023 (E.D. Tenn. 2008)............................................................2

*Uribe v. McKesson*,
   2011 WL 3925077 (E.D. Cal. Sept. 7, 2011) ...................................................22

*Ventra v. U.S.*,
   121 F. Supp. 2d 326 (S.D.N.Y. 2000) .........................................................9, 12

*Vona v. Schindler Elevator Corp. Mgmt.*,
   2009 WL 2152309 (W.D.N.Y. July 14, 2009) ...................................................18

*Warshay v. Guiness PLC*,
   750 F. Supp. 628 (S.D.N.Y. 1990), *aff'd* 935 F.2d 1278 (2d Cir. 1991) ...........21

**STATUTES**

28 U.S.C. § 1927 ............................................................................................20, 23

**RULES & REGULATIONS**

Fed. R. Civ. P. 26 ..........................................................................................17

Fed. R. Civ. P. 26(a)(1) .....................................................................................1

Fed. R. Civ. P. 26(a)(1)(A) ...........................................................................2, 10

Fed. R. Civ. P. 26(a) and (e) ............................................................................24

Fed. R. Civ. P. 26(e).......................................................................................9, 10

Fed. R. Civ. P. 26(e)(1)(A) .............................................................................9, 11

Fed. R. Civ. P. 37(c)(1)..............................................................................*passim*

Fed. R. Civ. P. 56(h) ..................................................................................*passim*

## MEMORANDUM IN SUPPORT OF MOTION

Defendant Raymond Evans has committed a match-ending double fault by: (1) submitting declarations from two witnesses he did not disclose under Fed. R. Civ. P. 26(a)(1), while (2) knowing full well that those declarations are false and perjurious. *See* ECF Nos. 63-29 and 63-30.[1] Thus, Plaintiff HH Associates, U.S., Inc., as successor to InnerWorkings, Inc. ("IW") moves in accordance with Fed. R. Civ. P. 37(c)(1) to strike those declarations, and requests sanctions pursuant to Fed. R. Civ. P. 56(h), 28 U.S.C. § 1927, and the Court's inherent authority, in the form of an order that Evans has forfeited *any* defenses to summary judgment and awarding IW its attorneys' fees incurred in preparing this Motion because Evans introduced facially perjurious declarations in this case even though their falsity was clearly shown in the Florida Action and Evans's counsel here, Jennifer Corinis, is lead counsel for one

---

[1] All discovery in this case was technically taken as part of the related case currently pending in the U.S. District Court for the Middle District of Florida, *InnerWorkings, Inc. v. Horn, et al.*, C.A. No. 8:21-cv-00903 (the "Florida Action"). The Parties here agreed that the same discovery would be used in this case, as Evans's former counsel and his current counsel both represent Defendant Sara Horn in that case, and the only reason there are two separate actions is that Evans refused to consent to jurisdiction in Florida, thereby requiring that IW file this action against him. *See* ECF Nos. 31-1 at ¶ 16, 38-3. In other words, the Parties agreed that the Florida defendants' discovery responses (including initial disclosures) are imputed to Evans as though they were his own. *See* ECF Nos. 29, at 4 ("The parties in this matter stipulated that discovery in the Florida case may be used as if taken in the Hawai'i case."); 42-1 at ¶ 5 ("Counsel agreed that the discovery in the Florida case can be used in the Hawai'i case, and that *no new discovery would be conducted in the Hawai'i case*.") (emphasis added). Any attempt to unilaterally change the parties' stipulation now that Evans has new counsel, and now that discovery has closed, would be highly inappropriate.

of the defendants in that case. Indeed, "[u]nder Rule 56([h]), if a court finds that a party submitted an affidavit in bad faith, it is "obligated to impose sanctions." *Trs. of Plumbers & Steamfitters Loc. Union No. 43 Health & Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1039–40 (E.D. Tenn. 2008).

# I.   BACKGROUND

## A.   IW Sues Evans for, *Inter Alia*, His Wrongful Solicitation of IW's Hawai'i Customers

IW commenced this action almost two years ago, on February 11, 2022. *See* ECF No. 1. In its Complaint, IW alleged that Evans conspired to steal IW's Hawai'i business by working with Smart Source, LLC ("SS") and his former supervisor, Horn, to solicit away all of IW's Hawai'i sales reps and all of IW's Hawai'i customers, virtually all of whom moved their business to SS as a result, destroying IW's Hawai'i business and pushing IW out of the market in Hawai'i. IW asserted claims against Evans for breach of his confidentiality agreement, misappropriation of trade secrets, breach of fiduciary duty, tortious interference, and conspiracy.

## B.   Evans Never Disclosed Any Customers as Witnesses on Whose Testimony He Intended to Rely During 23 Months of Discovery

Discovery commenced in the Florida Action on August 27, 2021, when IW served its first request for production of documents. (Warner Decl., Ex. A). The parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) on September 17, 2021. (Warner Decl., Exs. B–C). The Florida defendants disclosed 16 witnesses, including three witnesses whose knowledge included "sourcing and

retention of SS's Hawaii customers," and nine witnesses whose knowledge included "customer relationships at IW and SS" and "any communications with IW' clients." (Warner Decl., Exs. B–C). All of the witnesses disclosed by the Florida defendants in their initial disclosures were employees of either SS or IW. They disclosed no customers of either SS or IW. Evans never updated the initial disclosures in this case, nor did he otherwise identify any additional witnesses.

During discovery, the parties explored IW's claims that Evans wrongfully solicited IW's Hawaiʻi customers. For example, IW requested the production of "documents and communications between [SS] and any clients that have been serviced by [IW] at any point since August 8, 2017[.]" (Warner Decl. Ex. A at Request No. 15). In response to this request, the Florida defendants produced 20 instances where Evans sent a form solicitation email that IW quoted in its Complaint in this case (ECF No. 1 at ¶ 77) *from his SS email account* to his IW clients while still  employed by IW (Warner Decl., Ex. D), including Evans's February 13, 2020 solicitation email to Dino Corpuz at First Hawaiian Bank (Warner Decl., Ex. D at SS_ESI089638), and one email referencing a phone call that Evans had had with an IW client soliciting it for SS. (Warner Decl., Ex. E).

On September 30, 2022, the Florida defendants served contention interrogatories on IW. (Warner Decl. at ¶ 4). Further demonstrating that Evans participated in that discovery process (*see* footnote 1, *supra*), Interrogatory No. 12 asked IW to "[s]tate with specificity all facts that You contend support Your contention that Raymond Evans

3

solicited [IW] clients to leave [IW] at the direction of Sara Horn and [SS]." (Warner Decl., Ex. F at Resp. 12). In response, IW stated, *inter alia*, that Evans used "his [SS] email account, with which [SS] provided him while he was still employed at [IW] . . . , to send the same solicitation email to all of his [IW] customers asking them to "continue to allow [him] to service and take care of" them, to "DELETE" his IW email address, "ADD" his [SS] email address, "ADD as a New Vendor: [SS] LLC," and to let him "know what else [they] … need[ed] from [him] to set up [SS] LLC as a New Vendor within [his] … system[s]," citing all 20 of the solicitation emails that Evans had produced, including, specifically, Evans's February 13, 2020 to Dino Corpuz. (*Id.* (incorporating Resp. 9)). IW further stated: "The purpose of the email was to induce the customer to move its business from [IW] to [SS]. (Evans Dep. at 244:22–25.)." (*Id.*).

## C. Evans Submitted Perjurious Declarations from Previously Undisclosed Witnesses on Summary Judgment

Fact discovery closed in this case on August 21, 2023. (ECF No. 22).[2] IW moved for summary judgment that day. *See* ECF No. 27. Now, months later, and only in response to IW's motion for summary judgment, Evans submitted declarations from two former IW customers whom Evans serviced on behalf of IW (Dino Corpuz (ECF No. 63-29) and Michael Skedeleski (ECF No. 63-30)). Neither of these witnesses was disclosed in Evans's initial disclosures. Both declarations

---

[2] Discovery in the Florida Action closed on January 23, 2023, and based on the agreement outlined in footnote 1 neither party took any additional discovery in this case.

recite that the customer "was not contacted, solicited or coerced by anyone from [SS] … to stop working with [IW] and begin working with [SS]."

This is demonstrably false. In fact, contrary to these declarants' claims that they were never "contacted" or "solicited" to move their business from IW to SS, Evans *admitted at his deposition* that he affirmatively solicited *all* his IW customers to move their business from IW to SS. (Warner Decl., Ex. G at 245:7–24). Indeed, the Declaration of Dino Corpuz of First Hawaiian Bank ("FHB") claiming that "FHB was not contacted, solicited or coerced by anyone from [SS]" (ECF No. 63-29 at ¶ 8) is contradicted not only by Evans's sworn testimony, *but also by Evans's email from his SS email account to Corpuz explicitly soliciting FHB to move its business to SS*:



(Warner Decl., Ex. D at SS_ESI089638) (emphasis added). Not only is this email plainly a solicitation on its face, but Evans *admitted* that its purpose was to induce the customer-recipients to move his business to SS. (Warner Decl., Ex. G at 244:22–25). There is no question that Corpuz received Evans's solicitation email because Corpuz replied, acknowledging receipt, on February 18, 2020:

> **From:** Dino Corpuz <dmcorpuz@fhb.com>
> **Sent:** Tuesday, February 18, 2020 8:22 AM
> **To:** Ray Evans <rayevans@smartsourcellc.com>
> **Subject:** RE: Fw: ***RAY EVANS - NEW E-MAIL & COMPANY (Honolulu)
>
> Hi Ray – Received.
>
> Dino

(Warner Decl., Ex. D at SS_ESI0189638). Two days later, on February 20, 2020 (three days after Evans officially commenced employment at SS), Evans replied to Corpuz, writing that he had "finally got[ten] [his] SS LLC computer," and stating that he would need a new "access badge" for FHB, as his present one said "IW." (*Id.*). Corpuz replied the same day, letting Evans know that he would "work on getting you a new card on Monday." (*Id.*).

This email should come as no surprise to Evans, not only because *he wrote it and produced it*, but also because *IW quoted from it in its Complaint* filed almost two years ago. (ECF No. 1 at ¶ 77). IW further alleged that "[u]pon information and belief, and given (a) the generic nature of Evans's February 13, 2020 email to the [IW] client, and the fact that  the general salutation is written in the plural—"friends"—Evans sent a similar email to all of the [IW] clients he serviced while he

was still employed by [IW] in violation of his fiduciary duty of loyalty to IW, and Horn and [SS] encourage and substantially assisted Evans in those violations of his fiduciary duty of loyalty." (*Id.* at ¶ 78).

Moreover, IW questioned Evans about his form solicitation email at his deposition. Evans confirmed that its purpose was to "get [the] customer to move to SS with [him]." (Warner Decl., Ex. G at 244:22–25). Evans also confirmed that he sent the same form solicitation to *all* his IW customers. (*Id.* at 245:17–21). Indeed, Evans testified that he was careful to ensure that he solicited all his IW customers for SS while he was still employed by IW because he (erroneously) believed that he was only prohibited from soliciting his customers *after* his employment with IW ended. (*Id.* at 245:17–23, 261:11–262:22).

In addition, IW specifically identified not only the form solicitation email, but the *precise iteration* of that form email that Evans sent to Corpuz on February 13, 2020 from his SS email account in its interrogatory responses as a key piece of evidence in support of its claims. *See supra*, at p. 4.

### D.  IW Filed a Similar Motion in the Florida Action Where Evans's Current and Prior Counsel Both Represent(ed) a Party

IW filed a motion like this one in the Florida Action, in which Evans's former and current counsel (Mr. Hildebrand and Ms. Corinis) both represent Horn and thus are fully aware of the practical and ethical issues implicated by submitting false declarations. There can be no argument that they, and thus Evans, were not aware

7

that the Corpuz and Skedeleski declarations are perjurious. Indeed, this is all the more evident because Evans himself *admitted* that he solicited *all* his IW customers, including Corpuz and Skedeleski, and sent the email pictured above directly soliciting Corpuz.

### E.   IW Has Also Already Raised this Issue in this Case

If the foregoing were not enough to put Evans and his counsel on notice that the Corpuz and Skedeleski declarations are facially perjurious, IW has also raised this issue *in this case* on September 11, 2023 (almost two months before Evans filed the perjurious declarations here):

> Then, in the Florida Case, SS and Attorney Hildebrand (on behalf of his client, Horn) submitted false declarations from former IW customers that moved their business to SS in an effort to show that they were not solicited by Evans. *See* Warner Decl., Exs. P, Q. But Evans's own contemporaneous emails to one of those customers expressly soliciting him for SS (*id.* at Ex. S) and Evans's *admission* at his deposition that he solicited "all" of his IW customers while he was still employed directly contradict the sworn declarations Attorney Hildebrand and his colleagues filed with the court. *Id.*, at Ex. T at 242:24-243:1, 245:17-24.
>
> Attorney Hildebrand has now, unfortunately, brought his co-counsel here into the mix.

ECF No. 38, at 9 n.6. The final sentence of IW's statement above was prescient, as Evans's substitute counsel has taken the reins and is running with the *very same* perjurious declarations in this case despite knowing they are false.

## II.   ARGUMENT

### A.   The Customer Declarations Must Be Precluded Under Rule 37(c)(1) Because Evans Failed to Identify the Declarants in His Rule 26(a) Initial Disclosures

Rule 26(a) of the Federal Rules of Civil Procedure requires a party to disclose the

names of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party might use to support its claims or defenses." Fed. R. Civ. P. 26(e) requires a party to supplement its disclosures and responses "in a timely manner if the party learns that in some material respect, the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

A party who fails to make proper disclosures under Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence *on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). "The purpose of the rule is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ventra v. U.S.*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000). No showing of bad faith is required to preclude the use of evidence that was not properly disclosed. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). To the contrary, under Rule 37(c)(1), "*[p]reclusion is 'automatic'* unless the non-disclosure was substantially justified or harmless, or unless the district court in its discretion chooses an alternative sanction as provided in Rule 37(c)(1)." *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (quoting *Design Strategy*, 469 F.3d at 298) (emphasis added); *see also Pete's Towing Co. v. City of Tampa, Fla.*, 648 F. Supp. 2d 1276, 1280–81 (M.D. Fla. 2009) (striking affidavit submitted on summary judgment pursuant to Rule 37(c) because the party "did not disclose [affiant] as a potential witness pursuant to Fed. R. Civ. P. 26").

Thus, the Court must decide two issues. First, is there a violation of Rule 26(a)(1)(A) and/or Rule 26(e) that was not substantially justified or harmless? If so, as here, a sanction is required under Rule 37(c)(1). Second, what sanction is appropriate?

### B.   Rule 37(c)(1) Sanctions Are Required in This Case

Rule 37(c)(1) sanctions are required here because Evans failed to fulfill his obligations under Rule 26(a) and (e). Evans was required to disclose the names of "each individual" with discoverable information that he "may use to support [his] claims," and the "subjects of th[e] information" possessed by each such individual. Fed. R. Civ. P. 26(a)(1)(A). Evans failed to do this. Because Skedeleski and Corpuz were not among the 16 witnesses Evans disclosed in his initial disclosures, IW had no reason to expect that Evans would seek to rely on testimony from those individuals.

### 1.   Evans's Failure to Disclose Was Not "Substantially Justified"

Evans cannot establish that his failure to disclose these witnesses was "substantially justified." Fed. R. Civ. P. 37(c)(1). Evans did not learn of the identity of these witnesses unexpectedly at the last minute. Indeed, there can be no question that each such witness has been known to Evans from even before the outset of the case more than two years ago. Each witness states that he was a customer of IW serviced by Ray Evans (ECF No. 63-29 at ¶ 4; ECF No. 63-30 at ¶ 4). Evans left IW on February 14, 2020. Thus, these witnesses have been known to Evans for at least three and a half years.

10

Nor did the issues on which these witnesses have provided declarations arise unexpectedly at the last minute. They have been known to Evans since the inception of this case. Indeed, Evans identified other witnesses on this very topic— "communications with IW' [sic] clients"—in his initial disclosures. This, of course, makes sense, as one of the primary claims pled in the Complaint is that Evans improperly solicited IW's customers. Thus, Evans should have been aware of the need to disclose the identity of the witnesses on whose testimony he now seeks to rely. Evans now seeks to introduce declarations from two of those customers rebutting that very claim. He could, and should, have disclosed these witnesses years ago, and he has no excuse for not having done so.

Not only should Evans have disclosed the identity of the customer witnesses he intended to use at the outset of the discovery period when he served his first set of Rule 26(a) disclosures, he should have timely supplemented his disclosures when he first considered that his earlier disclosures were in any way "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A); *see also Lawver v. Hillcrest Hospice, Inc.,* 300 Fed. Appx. 768, 770 (11th Cir. 2008) (*per curiam*) (unpublished) (affirming strike of affidavit where affiant had not been disclosed in initial disclosures and the party never "supplement[ed] her disclosures to reveal her intended witness"). Evans has offered no justification, nor is there any conceivable justification, for his failure to identify these witnesses more than two years into the case on the very topics that IW pled in Complaint and that *Evans himself* identified as relevant to this case.

11

### 2. <u>Evans's Failure to Disclose Was Not "Harmless"</u>

Nor can Evans claim that his failure to disclose the customer witnesses was harmless. During discovery, which lasted just days shy of two years, IW decided what discovery to seek—and to forego—based on the witnesses disclosed in Evans's initial disclosures. Indeed, that is the purpose of initial disclosures: to identify potential witnesses, and enable a party to "determine whether a deposition of a particular person identified as a potential witness might be necessary." *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 2874373, at *2 (D. Kan. July 22, 2008); *see also Hertz v. Luzenac Am., Inc.*, 2006 WL 994431, at *7 (D. Colo. Apr. 13, 2006) (the purpose of initial disclosures is to "provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation"). Now, Evans has submitted declarations from two witnesses whose depositions IW had no reason to seek during discovery. That is the very definition of "sandbagging" that the Rules were intended to prevent. *Ventra*, 121 F. Supp. 2d at 332.

If this Court were to enable Evans to rely on the customer declarations (which it should not), to enable IW to appropriately explore his allegations, the Court would need to re-open fact discovery in this more than two-year-old case, in which the parties already went through 23 months of extensive discovery. The case law is clear that imposing this burden on an adversary is far from harmless. *See, e.g.*, *Design Strategy*, 469 F.3d at 297 ("[t]he prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened");

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A.*, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) (finding the prejudice "particularly great because discovery is closed and would have to be reopened"); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (same, where discovery "closed over four months ago"); *Morritt v. Stryker Corp.*, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) (finding prejudice to be "severe" because "discovery would has to be reopened") (quoting *Design Strategy*, 469 F.3d at 296).

The prejudice to IW from reopening of fact discovery is even greater because it has moved for summary judgment, and that motion is now fully briefed and set for a hearing. Likewise, trial will commence shortly after that motion is resolved.

Because extensive summary judgment briefing has already occurred, this is not a matter of simply moving back dates and extending the discovery deadline. Not only would additional discovery have to be conducted, but IW would have to restructure its filings to take into account the new information generated during that process. Reopening fact discovery would result in the waste of the resources already expended by IW in preparing its dispositive motion.

Thus, courts routinely recognize the severe prejudice that would result from reopening the discovery period once summary judgment motions have been filed. *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 2014 WL 1243685, at *11 (S.D.N.Y. Mar. 26, 2014) (prejudice that would result from reopening discovery would be "severe" because defendant had already moved for summary

judgment, "addressed in good faith to the theories and evidence that had been disclosed") (citation omitted); *Every v. Makita U.S.A., Inc*., 2005 WL 2757952, at *6 (S.DN.Y. Oct. 24, 2005) ("Defendants are entitled to make summary judgment motions on the basis of the discovery record compiled in accordance with the federal rules and the court's orders," and "reopening discovery" would "render[] [Evans's] motion, addressed in good faith to the theories and evidence that had been disclosed, an expensive waste of effort"); *Fleming v. Verizon N.Y., Inc.*, 2006 WL 2709766, at *8 (S.D.N.Y. Sept. 22, 2006) (finding prejudice because defendant "made its motion for summary judgment based on what it thought to be all of the evidence accumulated in discovery").[3]

Indeed, this prejudice is precisely why deadlines for the disclosure of witnesses and their areas of knowledge are scheduled *before* the deadline for filing dispositive motions. *Ruhland v. Walter Kiddle Portable Equip., Inc.*, 179 F.R.D. 246, 250 (W.D. Wis. 1998) (explaining that this timing is intended to provide the parties an opportunity to formulate a dispositive motion on the basis of the opposing parties'

---

[3] *See also Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2013 WL 4409434 at *15 (E.D.N.Y. Aug. 2, 2013) (Report & Recommendation) (prejudice significant where court would need to reopen discovery to allow supplemental expert discovery, thereby burdening defendant with additional costs, including having to resubmit a motion for summary judgment), *adopted as modified*, 2013 WL 5502852 (E.D.N.Y. Oct.1, 2013); *Jeter v. N.Y.C. Dep't of Educ. of City of New York*, 2012 WL 2885140, at *3 (E.D.N.Y. July 13, 2012) (refusing to consider untimely evidence because "as Defendants had already filed their motion for summary judgment before seeing these documents, Defendants were denied a chance to fashion their legal arguments to the material facts these documents illustrate").

disclosures). By submitting declarations from witnesses not previously disclosed, Evans has unilaterally restructured the Federal Rules of Civil Procedure and frustrated the orderly resolution of this case. *See Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006) ("It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will."). This is precisely what Rule 37 sanctions are designed to prevent. *See Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wis. 2003) (recognizing that "at the heart of Rule 37's automatic sanction provision is the recognition that precious time and resources of both opposing counsel and this Court are wasted when faced with unjustified delay").

### 3.    Preclusion Is the Appropriate Sanction Under Rule 37(c)(1)

Given that the standard for Rule 37(c)(1) sanctions is satisfied, this Court is left to determine what sanction should be imposed. The answer is clear: Evans should be precluded from relying on the customer declarations. Courts apply a four-factor test when assessing whether preclusion is appropriate under Rule 37(c): "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) importance of the … precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence] and (4) the possibility of a continuance.'" *Spotnana*, 2010 WL 3341837, at *2 (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *see also Design Strategy*, 469 F.3d at 296 (same). All four factors favor preclusion here.

15

**a.** **Evans Has No Justification for His Failure to Disclose These Witnesses**

The first factor (Evans's explanation for the failure to disclose) favors preclusion because, for all the reasons outlined above, Evans knew about these witnesses from well before the start of this case. *See supra* p. 12. There is no legitimate explanation for his failure to disclose these witnesses until now.

**b.** **The Declarations Are Not "Important" to Evans's Case**

The second factor (the importance of the precluded evidence) also favors preclusion. Evans relies on the declarations to establish that these two customers were not "contacted" or "solicited" by "anyone from SS," but simply decided "on [their] own to stop sending new orders to IW." But as discussed above, at least two of these declarations are demonstrably false. *See supra*, at pp. 4-9.

Even putting that aside, the Hawaii sales reps had hundreds of customers at IW. (Warner Decl., Ex. K). Even if the two customer-declarants were not solicited (they provably were), that would not mean that none of the other hundreds of customers were solicited and thus would not relieve Evans of liability on IW's claims involving customer solicitation. That is particularly true in light of Evans's testimony admitting that he solicited *all* of his IW customers for SS (*see supra*, at p. 8), the solicitation emails that Evans sent his IW customers that Evans produced in this litigation (including to Dino Corpuz) and the emails among SS executives and the Hawaiʻi sales reps instructing them to solicit their IW customers, including by setting up meetings

16

with their IW customers and SS executives. (Warner Decl., Ex. H; Ex. I at 224:16–19, 225:1–12; Ex. G at 275:14–17; *see also* Ex. J).

### c. IW Would Suffer Prejudice from Having to Reopen Fact Discovery After Having Moved for Summary Judgment

The third factor (prejudice to IW) favors preclusion because, as explained, if this Court were to find the customer declarations material, fact discovery would need to be reopened to allow IW an opportunity to test these allegations. IW would suffer substantial prejudice from having to reopen fact discovery to depose these two customers—three months after the fact discovery period closed and after IW has moved for summary judgment. The real, severe prejudice imposed by Evans's failure to comply with his Rule 26 obligations is self-evident.

### d. A Continuance Is Not Appropriate Here, Given the Age of the Case and The Fact That IW Has Moved for Summary Judgment

The fourth factor (the possibility of a continuance) strongly favors preclusion as well. "[A] continuance is not appropriate, given the age of this case and the fact that discovery has long been closed." *Advanced Analytics*, 2014 WL 1243685, at *12. The parties have been litigating this case for more than two years (including nearly 17 months of discovery). Further delays for the purpose of redoing components of fact discovery because Evans failed to abide by his Rule 26 obligations would significantly exacerbate this state of affairs. *See Pal v. N.Y. Univ.*, 2008 WL 2627614, at *5–6 (S.D.N.Y. June 30, 2008) (reopening discovery would prejudice party because it would

17

cause "not only further delay this almost-two-year-old case, but would impose further litigation costs" on the party); *Morritt*, 2011 WL 3876960 at *7 ("[T]he fact that discovery is closed and this case has been pending for over four years 'weighs strongly against the possibility of a continuance.'") (citations omitted); *Point Prods. A.G. v. Sony Music Entm't*, 2004 WL 345551 at *13 (S.D.N.Y. Feb. 23, 2004) ("[E]xclusion of the newly offered evidence, and not a continuance of discovery, is now the proper resolution in this decade old action."); *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003) (concluding that "a continuance [was] not a reasonable possibility" where the case had been ongoing for six years).

Putting aside the substantial age of this case, a continuance is also inappropriate because IW has moved for summary judgment. *See Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (excluding evidence submitted after the close of discovery and finding that "[i]n light of the advanced ... stage of the case a continuance is not a realistic solution"); *Spotnana*, 2010 WL 3341837, at *2 (finding that "closure of discovery ... also weighs strongly against the possibility of a continuance"); *Vona v. Schindler Elevator Corp. Mgmt.*, 2009 WL 2152309, at *8 (W.D.N.Y. July 14, 2009) (refusing to consider undisclosed affidavits on summary judgment and finding continuance unwarranted "since discovery closed several months prior" to motion).

**C.    Evans's Contention That the Declarations are not False is Preposterous**

Evans's counsel represented in meet and confer communications in this case that his position concerning the customer declarations is the same as Horn's was in response to a similar motion in the Florida Action, *i.e.*, they are not perjurious; rather, they are just Corpuz's and Skedeleski's "personal experiences and beliefs." (*See* Florida Action, Case No. 8:21-cv-903, ECF No. 207 at 16–20). That is nonsense. Whether Evans solicited Corpuz and Skedeleski is an objective fact, not something that someone can "experience" or "believe," and, as detailed above, Evans objectively solicited Corpuz and Skedeleski.  Evans admitted on the record that he solicited *all* the IW customers he serviced. (Warner Decl., Ex. G at 245:7–24). Indeed, the solicitation email Evans sent includes all the hallmarks of a direct solicitation: it provided his "NEW E-MAIL & COMPANY address"; it states that he "will be able to *continue to service you* [the customer] as in the past *but only in a more efficient manner*; it offers to "come by and visit" the customers; it instructs the customers how to remove his IW email address and add his SS email; it explains how to "ADD" SS "as a New Vendor" and asks that the customers "please let me know what else you need from me to set up [SS] as a New Vendor within your system"; and concludes with the following request: "*I hope you will continue to allow me to service and take care of you*." (Warner Decl., Ex. D at SS_ESI089638) (emphasis added). Thus, when Corpuz and Skedeleski swear under oath that they were "not contacted, solicited or coerced by anyone from [SS] … to stop

working with [IW] and begin working with SS," they are not being truthful. Evans torturously argued in the Florida Action that Corpuz's and Skedeleski's statements that Evans did not ask them to "stop working with IW" was technically true because although Evans solicited their business for Smart Source, the customers were not exclusive to IW, and could theoretically place orders with both companies simultaneously. That argument completely ignores that sales in this context are a zero-sum game, and any dollar that is spent with SS is not spent with IW.[4] Evans is grasping at straws if he sinks to making that argument here.

### D. Evans And His Counsel Should Also Be Sanctioned for Submitting Demonstrably False and Perjurious Declarations on Summary Judgment

Separate and apart from any sanctions issued under Rule 37(c)(1), Evans should be sanctioned under Federal Rule of Civil Procedure 56(h), 28 U.S.C. § 1927 and the Court's inherent authority, for submitting the Corpuz and Skedeleski declarations in opposition to IW's summary judgment motion because *he knows* those declarations are perjurious, as conclusively established by his own testimony and documents that he produced in this litigation, yet submitted them anyway. *See supra*, at pp. 4–9. Rule

---

[4] Even if Corpuz and Skedeleski somehow "believe" that their statement was true, or "experienced" it in that way, Evans and his counsel know that it is not true because Evans *admitted* that the purpose of the email was to induce the customer-recipients to move their business to SS. (Warner Decl., Ex. G at 244:22–25). Thus, if this argument is credited, and the Court buys that Corpuz and Skedeleski somehow do not believe the statement that counsel clearly wrote for them to sign is untrue, then Evans and his counsel both misled them and suborned their perjury.

56(h) subjects a party who submits "an affidavit or declaration" in connection with summary judgment "in bad faith or solely for delay" to sanctions. Fed. R. Civ. P. 56(h).

"A declaration is submitted in bad faith under Rule 56(h) when it 'knowingly contains perjurious or intentionally false assertions or knowingly seeks to mislead by omitting facts central to a pending issue.'" *Arrant v. Richardson*, 2019 WL 7630864, at \*4 (C.D. Cal. Dec. 10, 2019) (quoting *Coble v. Renfroe*, 2012 WL 4971997, at \*2 (W.D. Wash. Oct. 17, 2012)); *see also Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (noting that courts have found "bad faith" where "the attorney's conduct is 'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case'") (quoting *Jaisan, Inc. v. Sullivan,* 178 F.R.D. 412, 415–16 (S.D.N.Y.1998)). Indeed, "[u]nder Rule 56([h]), if a court finds that a party submitted an affidavit in bad faith, it is "***obligated to impose sanctions***." *Crawford*, 573 F. Supp. at 1039–40 (E.D. Tenn. 2008) (emphasis added) (quoting *Scott v. Metro. Health Corp.*, 234 Fed. Appx. 341, 368 (6th Cir.2007) (affirming sanctions where party submitted affidavits she knew were not truthful)).[5]

Here, "[a]t best, the [customer] affidavits contained a highly reckless

---

[5] *See also Warshay v. Guiness PLC*, 750 F. Supp. 628 (S.D.N.Y. 1990), *aff'd* 935 F.2d 1278 (2d Cir. 1991) (imposing sanctions under Rule 56(g), the predecessor to Rule 56(h), where the plaintiff submitted an affidavit in opposition to a summary judgment motion that contained false statements of fact and omitted contrary facts that were "not trivial nor easily overlooked").

representation of an important fact" and "Defendant never sought to expunge from the record despite subsequent notice as to its falsity"; and "[a]t worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case. Wherever the truth lies between these two extremes, the Court [should be] satisfied that [the customer] affidavit[s], submitted in [opposition to IW's] motion for summary judgment, was presented in bad faith." *Rogers v. AC Humko Corp.*, 56 F.Supp.2d 972, 981 (W.D. Tenn. 1999).

The sanction imposed for submitting false declarations (as opposed to submitting affidavits from previously undisclosed witnesses, which is bad enough in and of itself) should be commensurate with the severity of the misconduct, which in this case is severe. Given the egregious nature of this conduct, and the fact that Evans's counsel has submitted *the same* false declarations previously in this and the Florida Action, *and has been called out for it multiple times*, IW submits that the sanction should be an order that Evans has forfeited *any* defenses to summary judgment. Merely excluding the declarations, which the Court should do in any event because they were not previously disclosed, would be insufficient. In similar contexts, more severe case-terminating sanctions have been awarded. *See Uribe v. McKesson*, 2011 WL 3925077, at *1 (E.D. Cal. Sept. 7, 2011) ("The Court issues the instant order finding that terminating sanctions should be imposed upon Plaintiff for

filing a false declaration in support of his motion for summary judgment.").[6]

In addition, IW should be awarded the attorneys' fees incurred in preparing the instant motion pursuant to Rule 56(h) and 28 U.S.C. § 1927. *See* Fed. R. Civ. P. 56(h) ("If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court . . . may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result."); 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").[7]

---

[6] *See also, e.g.*, *Juarez v. Delgado*, 2016 WL 3660613, at *4 (C.D. Cal. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 3670989 (C.D. Cal. July 6, 2016) ("Court has the inherent power to impose various non-monetary sanctions, including 'outright dismissal of a lawsuit' for conduct that 'abuses the judicial process.' 'Dismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'") (quoting *Chambers v. Nasco, Inc*., 501 U.S. 32, 45–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980); *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006); and citing *Combs v. Rockwell Int'l Corp*., 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying a [document]. . . . [T]he court's inherent powers[ ] can be called upon to redress such mendacity.")).

[7] *See also Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750 (M.D. Pa. 2017) (attorneys' fees assessed against plaintiff based on her "sham affidavit" in connection with summary judgment motion); *Barticheck v. Fidelity Union Bank/First Nat. State*, 680 F. Supp. 144 (D.N.J. 1988) (attorneys' fees assessed where court found that affidavit, which contradicted affiant's previous deposition testimony, constituted effort to mislead court and delay proceedings); *Acrotube, Inc. v. J.K. Fin. Grp., Inc*., 653 F.

## III.   **CONCLUSION**

For the foregoing reasons, IW requests that the Court (1) strike the Declarations of Dino Corpuz (ECF No. 63-29) and Michael Skedeleski (ECF No. 63-30) submitted by Evans in support of his opposition to IW's motion for summary judgment pursuant to Fed. R. Civ. P. 26(a) and (e) and 37(c)(1); and (2) issue an order that Evans has forfeited *any* defenses to summary judgment and award IW its attorneys' fees incurred in preparing the instant Motion as a sanction for Evans's submission of false declarations in opposition to summary judgment, thereby unreasonably and vexatiously multiplying the proceedings, pursuant to Fed. R. Civ. P. 56(h), 28 U.S.C. § 1927, and the Court's inherent authority.

Dated:  Honolulu, Hawaii, November 20, 2023.

*/s/ Christopher J. Cole*
Christopher J. Cole
Ronald Tang
Peter A. Steinmeyer *(Pro Hac Vice)*
Erik W. Weibust *(Pro Hac Vice)*
A. Millie Warner *(Pro Hac Vice)*

Attorneys for Plaintiff
HH Associates, U.S., Inc.

---

Supp. 470 (N.D. Ga. 1987) (sanctions ordered, including attorneys' fees, in connection with summary judgment affidavit containing clearly false statement; court found affiant was guilty of "an effort to mislead the court and delay the proceedings").